UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTHAMER TAX RESOLUTION, INC.,
et al.,

    Plaintiffs,

v.

PAUL KIMMEL,

    Defendant.
_____/

Case No. 1:25-cv-579

Hon. Hala Y. Jarbou

## ORDER

Plaintiffs Lothamer Tax Resolution, Inc., Lothamer Consulting Services, LLC, and Lothamer Franchise Corporation (collectively "Lothamer") bring various federal and state claims against Defendant Paul Kimmel, including—as relevant here—breach of contract. (Compl., ECF No. 1.)  Lothamer moved for a preliminary injunction on May 20, 2025 (ECF No. 2) and for a temporary restraining order and preliminary injunction on July 24, 2025 (ECF No. 87).  In its August 29, 2025, order, this Court granted in part and denied in part the July 24, 2025, motion, and denied in part and held in abeyance in part the May 20, 2025, motion.  (ECF No. 129.)  The Court held an evidentiary hearing on September 16 and 17, 2025, to resolve the one issue held in abeyance: the request for preliminary injunctive relief to enforce the non-retention clause of Kimmel's employment contract.  Based on the evidence presented at the hearing, and for the reasons explained below, the Court will grant Lothamer's motion for a preliminary injunction.

The full factual background of this case is detailed in this Court's August 29, 2025, opinion (ECF No. 128), and need not be recounted here.  As relevant to this order, Kimmel is a former Lothamer employee who is alleged to have breached his employment contract.  The contractual

provision relevant to this order is the non-retention clause, which provides that Kimmel "will . . . return all confidential information in his[] possession, or in the possession of others given permission to have such information, upon request or demand by [Lothamer], or within two weeks from the termination date of employment." (Employment Agreement ¶ 12, ECF No. 1-3.) Lothamer contends that Kimmel is in breach of this provision because he maintains copies of the company's code and client data, including a software program that its clients use called the Portal. Lothamer seeks a preliminary injunction to specifically enforce the non-retention provision.

Whether to issue a preliminary injunction is in the discretion of the district court. *Planet Aid v. City of St. Johns*, 782 F.3d 318, 323 (6th Cir. 2015). A court considers and balances four factors: (1) whether the movant has established a substantial likelihood or probability of success on the merits; (2) whether the movant would suffer irreparable injury without the preliminary injunction; (3) whether the issuance of the preliminary injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the preliminary injunction. *Kentucky v. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014).

In this Court's August 29 opinion, it held that Lothamer had established a likelihood of success on the merits as to the breach of the non-retention clause, but that further evidence was needed to determine whether Lothamer would likely suffer irreparable harm without an injunction. Lothamer contends that Kimmel's retention of the company's code and client data is likely to harm it in three ways. First, Kimmel can use the information to compete with it and draw its clients away. Second, Kimmel can use the information to gain unauthorized access to Lothamer's systems and sabotage them, take more data, or engage in other wrongful activity. Third, Kimmel's copy of the information could be accessed by other nefarious actors, who could use it to harm Lothamer.

At the hearing, Kimmel admitted that he has copies of Lothamer's code and client data on his personal computer. Lothamer presented the testimony of Ryan Vartoogian—a technology consultant who has worked for Lothamer for many years and helped design the company's Portal—who indicated that the Portal contains sensitive client data such as social security numbers and financial information. Kimmel also testified that he is operating a company, CheapTaxSolutions.com, that provides information to people so they can complete their taxes without the aid of a service like Lothamer's. However, Kimmel testified that he has not used any of Lothamer's code or client data to operate his own company. Rather, he claims that his only intention is to retain the information to report Lothamer's alleged wrongdoing to government entities.

Vartoogian also testified about a file that Kimmel had added to Lothamer's system, apparently without the knowledge or consent of the company. According to Vartoogian, this file—part of something called "Project Alice"—was created by Kimmel while he still worked at Lothamer, but just after the company told him it intended to terminate his employment. Although Kimmel appeared to deny having created the file, Vartoogian testified that he could tell Kimmel was the author based on information in Lothamer's system. According to Vartoogian, the file at issue contained an encoded animated image, which itself contained an audio file, which in turn contained an encrypted file that Lothamer was unable to decrypt. However, Vartoogian testified that the code appeared to be connected to Lothamer's Portal, such that it could allow a person to enter a particular passphrase into the front end of the Portal and trigger the encrypted code. Though Vartoogian had not yet determined the purpose of the underlying encrypted code, he believed it was a "backdoor," i.e. a way for Kimmel to access Lothamer's systems from the outside without the company's knowledge or permission.

Based on the evidence presented, Lothamer has established that it is likely to experience irreparable harm in the absence of an injunction. Even if the Court accepts Kimmel's assertion that he is not using the confidential information he possesses to compete with Lothamer or to gain unauthorized access to its systems, his retention of this information still increases the likelihood that someone else will be able to access Lothamer's proprietary code or sensitive client information. Such a breach could cause irreparable harm either in the form of direct damage to Lothamer's computer system or indirect damage via the loss of customer goodwill. *See Basicomputer Corp. v. Scott*, 973 F.2d 507, 511 (6th Cir. 1992) ("A loss of customer goodwill often amounts to irreparable injury.").

Furthermore, the Court does not credit Kimmel's assurances that he will not use Lothamer's information. First, the Court finds it implausible that Kimmel has retained significant amounts of Lothamer's data, and begun operating a company that appeals to the same client base as Lothamer, but is not using Lothamer's data in any way. Second, the evasive and combative nature of many of Kimmel's answers weakens the credibility of his assurances. Third, Kimmel's credibility is further undermined by the contradictions between his testimony and Vartoogian's. Kimmel denied responsibility for the "backdoor" code, but Vartoogian testified that the system identifies Kimmel as the author. Kimmel provided no other explanation for who would have written the Project Alice code, and it is much more plausible that Kimmel created the code for his own purposes than that Lothamer fabricated its existence. The presence of the "backdoor" also indicates that Kimmel has taken actions to potentially harm Lothamer—or at least to access its systems without permission—which increases the likelihood that Kimmel will use Lothamer's information for some malicious purpose in the future.

Even if Kimmel has no current plans to use Lothamer's data for his own company, simply having the data creates a risk that he will be tempted to use it. *See Lowry Computer Prods., Inc. v. Head*, 984 F. Supp. 1111, 1116–17 (E.D. Mich. 1997) ("[D]efendant must have at least some confidential information [from her former employer], in the form of customer lists, profit margins and pricing schemes. This court is . . . wary of defendant's claim that she will have no occasion to divulge the information in the course of her [new] employment . . . .")  If he used the information to unfairly compete, this would constitute irreparable harm to Lothamer. *See id.* ("The loss of consumer goodwill and the weakened ability to fairly compete that would result from disclosure of trade secrets and the breach of a non-compete agreement does establish irreparable injury." (citing *Basicomputer*, 973 F.2d at 512)).  If Kimmel used the information to sabotage Lothamer's systems, that would also constitute irreparable harm.

As for the other preliminary injunction factors, the Court determined in its prior opinion that Lothamer is likely to succeed on the merits of its claim.  Kimmel has not established that an injunction would cause him, or anyone else, significant hardship.  Furthermore, the public interest is served by the enforcement of valid employment contracts.  *See Henkel Corp. v. Cox*, 386 F. Supp. 2d 898, 904 (E.D. Mich. 2005).  Preventing the misuse of sensitive customer information, or the breach of Lothamer's system by nefarious actors, is also in the public interest.  Thus, the Court will issue an injunction requiring Kimmel to turn over his copies of Lothamer's information.

At the hearing, Lothamer also requested that the Court order Kimmel to provide it the information necessary to decrypt the backdoor code.  Although Lothamer has not argued that the creation or use of the backdoor would itself violate the employment contract, the Court is persuaded that the key used to decrypt the backdoor is itself something that Kimmel was obligated to return under the contract.  According to Vartoogian's testimony, Kimmel wrote and deployed

5

the backdoor code while he was still employed by Lothamer.  When he created that code, he would also have created the key or method to decrypt it.  The decryption key is thus a piece of confidential information that pertains to code within Lothamer's system, so it properly belongs to Lothamer.

Kimmel contends that the employment agreement only requires him to return tangible property rather than intangible property such as digital files.  However, the contractual language does not support this contention.  Kimmel points to the provision of the contract requiring him to return "[a]ll documents and tangible things" to Lothamer.  (Employment Agreement ¶ 12.)  But "tangible" does not modify "documents" in this phrase.  Rather, the provision identifies two categories of things that Kimmel must return—documents (whether intangible or tangible), and tangible things.  Even if digital files are not "tangible things," they are certainly "documents," and thus must be returned.  More importantly, the subsequent paragraph states that Kimmel "*also* will return all confidential information in his[] possession." (*Id.* (emphasis added).)  Lothamer's code and client data are plainly "information," and there is no contractual language limiting this provision's scope to "tangible" forms of information.  The encryption key for the backdoor is also "information," so it must be returned to Lothamer.

Accordingly,

**IT IS ORDERED THAT** the portion of Lothamer's motion for a preliminary injunction (ECF No. 2) previously held in abeyance is **GRANTED**.

**IT IS ORDERED THAT** Kimmel must immediately (1) return to Lothamer all of the company's property or confidential information he still possesses or controls, whether in digital or physical form, including (but not limited to): Lothamer's Portal, the Scheduled Deposits Program, the key or method for decrypting "Project Alice" and the "backdoor" file, and any other software, files, code, client lists, client data, encryption keys, or copies thereof; (2) after returning

Lothamer's property and information, delete or destroy all copies of that information in his possession or control; (3) cease and refrain from using or disclosing Lothamer's confidential information and property; and (4) provide a list of all people or organizations to whom he has disclosed Lothamer's confidential information without the company's permission, people or organizations who currently possess Lothamer's confidential information due to his unauthorized disclosure, and locations (physical or online) where he has deposited or posted Lothamer's confidential information.  To the extent that the deletion of files in (2) conflicts with the Court's prior order requiring preservation of such files (ECF No. 60), this Order controls.

Dated: September 19, 2025  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE