UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTHAMER TAX RESOLUTION, INC.,
et al.,

    Plaintiffs,                                       Case No. 1:25-cv-579

v.                                                      Hon. Hala Y. Jarbou

PAUL KIMMEL,

    Defendant.
_____/

## ORDER TO SHOW CAUSE

In its August 29, 2025, opinion, this Court observed that one of Defendant Paul Kimmel's filings contained a significant number of citations that mischaracterized cases or cited nonexistent legal authority. (*See* 8/29/2025 Op. 27–28, ECF No. 128.) The Court explained that these citations and the associated filings were presumably written by generative artificial intelligence ("AI"), which often "hallucinates" false information. The Court noted that even though Kimmel is proceeding pro se, it is nonetheless inappropriate to include such false information in a filing, and "[s]anctions may be imposed for submitting false and nonexistent legal authority to the Court." *Anonymous v. N.Y.C. Dep't of Educ.*, No. 1:24-cv-04232, 2024 WL 3460049, at *7 (S.D.N.Y. July 18, 2024). However, the Court did not impose sanctions at that time "[b]ecause Kimmel may not have recognized the risks of using AI." (8/29/2025 Op. 28.) Instead, it warned Kimmel that he would now be "on notice that future use of fictitious citations may result in sanctions." (*Id.*)

Unfortunately, this notice has proved ineffective. Kimmel's most recent filings—an October 30, 2025, objection to a report and recommendation ("R&R") (ECF No. 173) and a

November 10, 2025, response to Plaintiffs' objection to the R&R (ECF No. 175)—are similarly riddled with false or fictitious citations. For example:

- "In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525–26 (6th Cir. 2008), the Sixth Circuit held that when an employer 'immediately retaliates upon learning of the protected activity,' temporal proximity alone can establish causation because 'no other evidence is necessary to establish the causal connection.'" (Def.'s Obj. to R&R 6, ECF No. 173.) The cited case does not contain the second quotation.

- "*Shallal v. Catholic Social Services*, 455 Mich. 604, 621 (1997), and *Stefanski v. City of Center Line*, 504 Mich. 877, 879 (2019), both hold that an employee is protected once the employer has reason to believe the employee is about to report a legal or regulatory violation." (Def.'s Obj. to R&R 7.) *Stefanski v. City of Center Line* does not appear to exist. The citation, 504 Mich. 877, leads to an interstitial page in *Berdy v. Buffa*, 504 Mich. 876, 928 N.W.2d 204, 205 (2019), which bears no relevance to this case. There is a Michigan Supreme Court case on the statute at issue called *Stefanski v. Saginaw County 911 Communications Center Authority*, No. 166663, 2025 WL 1107897 (Mich. Apr. 14, 2025), but it does not stand for the proposition that "an employee is protected once the employer has reason to believe the employee is about to report a legal or regulatory violation."

- "*Kaufman & Payton, P.C. v. Nikkila*, 200 Mich. App. 250 (1993) held that 'objective notice' exists where the employer knows *or should know* that the employee is contemplating a report to a public body." (Def.'s Obj. to R&R 8 (italics added).) *Kaufman* discusses objective notice, but it does not stand for the stated proposition.

2

- "*Chandler v. Dowell Schlumberger, Inc.*, 456 Mich. 395 (1998), clarifies that WPA protection attaches when an employer knows or should know that the employee's disclosure involves—or will imminently involve—a report to a public body. The focus is on the employer's awareness of impending external reporting." *Chandler* contains no discussion of what an employer must be aware of for the Whistleblower's Protection Act ("WPA") to apply.  (Def.'s Obj. to R&R 8.)

- "*United States v. Garber*, 607 F.2d 92 (5th Cir. 1979), though addressing professional responsibility, underscores why such awareness was inescapable here: licensed professionals cannot feign ignorance of regulatory duties."  (Def.'s Obj. to R&R 8–9.) *Garber* is not about professional responsibility; it is an appeal of a tax evasion conviction.

- "The R&R ignored *Stefanski v. City of Center Line*, 504 Mich. 877 (2019), which reaffirms that WPA protection extends to employees 'about to report' when the employer has objective reason to know that external reporting is imminent."  (Def.'s Obj. to R&R 9.)  As noted above, the R&R ignored *Stefanski* because it does not exist.

- "*Shallal v. Catholic Social Services*, 455 Mich. 604, 622 (1997) (employer understood that a report was 'a distinct possibility' where the employee raised concerns implicating legal exposure)[.]"  (Def.'s Obj. to R&R 10.)  *Shallal* does not contain the quoted language.

- "*Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 251–52 (2014) (knowledge and causation may be shown by circumstantial evidence)[.]" (Def.'s Obj. to R&R 10.) *Wurtz* is about whether the WPA applies to the failure to renew a contract; it is not about knowledge and causation.

3

- "Michigan and federal courts consistently recognize that retaliation claims are fact-intensive and rarely appropriate for resolution at the pleading stage. See *Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 255 (2014) (causation under the WPA 'is ordinarily a question for the fact-finder')[.]" (Def.'s Obj. to R&R 13–14.) *Wurtz* does not contain the quoted language or any similar statement; as noted above, it is purely about the application of the WPA to the failure to renew a contract.

- "*Roulston v. Tendercare (Mich.), Inc.*, 239 Mich. App. 270, 281 (2000) ('issues of motive and intent are generally inappropriate for summary disposition')[.]" (Def.'s Obj. to R&R 14.) *Roulston* does not contain the quoted language or any similar statement.

- "*Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 625 (6th Cir. 2013) (retaliation causation 'turns on factual context')." (Def.'s Obj. to R&R 14.) *Kuhn* does not contain the quoted language.

- "Its tone and timing contradict any assertion of legitimate cause and exemplify the 'shifting and inconsistent explanations' that Michigan courts recognize as circumstantial evidence of retaliatory motive. *Roulston*, 239 Mich App at 281." (Def.'s Obj. to R&R 15.) *Roulston* does not contain the quoted language or any similar statement.

- "Lothamer's own words—apologizing for the termination and offering re employment—are admissions fundamentally inconsistent with any legitimate management rationale. Under MCL 15.362 and *Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 255 (2014), that unrebutted evidence alone precludes dismissal of Count II at the pleading stage." (Def.'s Obj. to R&R 15–16.) As noted above, *Wurtz* is about

4

the application of the WPA to the failure to renew a contract, and has no bearing on evidentiary standards or legitimate management rationales.

- "See *Routh Packing Co. v. U.S. Dep't of Agric.*, 246 F.3d 850, 855 (6th Cir. 2001) (courts must consider the 'complaint in its entirety')." (Def.'s Obj. to R&R 16.) The case at that citation has a different name (*EEOC v. J.H. Routh Packing Co.*) and does not contain the quoted language or any similar statement.

- "At the Rule 12(b)(6) stage, the Court must accept the pleaded facts as true and draw all reasonable inferences in Defendant's favor. *See* **Jones v. City of Allen Park**, 167 Mich. App. 300, 306 (1988) (WPA claim sufficient where discharge closely followed report of wrongdoing)." (Def.'s Obj. to R&R 16.) The citation is to an interstitial page in *Matter of Ricks*, 167 Mich. App. 285, 421 N.W.2d 667 (1988), which is about juvenile commitment. There is a WPA case called *Jones v. City of Allen Park*, 167 F. App'x 398 (6th Cir. 2006), but the court in *Jones* did not hold that the WPA claim was sufficient.

- "Premature dismissal — especially **with prejudice** — would contradict both that rule and the WPA's remedial purpose 'to remove barriers and fear of retaliation for those who report wrongdoing.' *Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68, 77 (1993)." (Def.'s Obj. to R&R 17.) *Dudewicz* does not contain the quoted language.

- "Under Michigan law, constructive fraud arises from a breach of legal or equitable duty 'which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive or violate confidence.' *Black*, 412 Mich. at 118; *Wirsing*, 573 B.R. at 920." (Def.'s Obj. to R&R 18–19.) *Black* does not contain the quoted language. *Wirsing*

5

does not appear to exist; the citation is to an interstitial page in *Matter of Staggs*, 573 B.R. 898, 920 (Bankr. N.D. Ala. 2017).

- "Michigan law permits equitable restitution where a party 'retains the benefits of another's services through fraud, coercion, or mistake.' *Olitkowski v. St. Casimir's S&L Ass'n*, 302 Mich. 303, 309 (1942); *Wolverine Ins. Co. v. Detroit Bank & Trust*, 420 Mich. 176, 189 (1984)." (Def.'s Obj. to R&R 21.)  Neither case contains the quoted language.  The case at 420 Mich. 176, which is actually entitled *Gen. Elec. Credit Corp. v. Wolverine Ins. Co.*, is not about equitable restitution.

- "In *U.S. ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439 (6th Cir. 2008), the Sixth Circuit affirmed dismissal of the fraud claim for lack of Rule 9(b) specificity but reversed dismissal of the retaliation claim.  The court held that a plaintiff 'need only allege facts which, taken as true, give rise to a plausible inference that the employer knew of the protected activity and retaliated because of it.' *Id.* at 449." (Def.'s Obj. to R&R 23.)  *Marlar* does not contain the quoted language.

- "The Sixth Circuit has repeatedly held that temporal proximity plus abrupt adverse action permits a plausible inference of employer knowledge and retaliatory motive at the pleading stage. *McKenzie v. Bel/South Telecomms., Inc.*, 219 F.3d 508, 518 (6th Cir. 2000)[.]" (Def.'s Obj. to R&R 25.)  *McKenzie* does not stand for the stated proposition, nor does it contain any discussion of how temporal proximity supports an inference of knowledge or motive.

- "The timing of the filings is irrelevant; defamation attaches upon any false statement 'communicated to a third party.' *Doe v. Mills*, 212 Mich App 73, 96 (1995)." (Def.'s

Obj. to R&R 28.)  *Doe* does not contain the quoted language, and is not about defamation.

- "Statements made by counsel on behalf of a client are imputed to the client under established agency law.  See *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008)[.]"  (Def.'s Obj. to R&R 29.)  *Pace* does not contain any discussion of agency law or the attribution of counsel's statements to a client.

- "[E]ach publication constitutes a separate act of defamation causing independent injury.  *See Pettigrew v. McNally*, 270 Mich App 670, 680 (2006) (each repetition is separately actionable)."  (Def.'s Obj. to R&R 30.)  *Pettigrew* does not appear to exist; the citation is to an interstitial page in *Face Trading Inc. v. Dep't of Consumer & Indus. Servs.*, 270 Mich. App. 653, 668, 717 N.W.2d 377, 386 (2006), which is not about defamation.

- "'A party must plead its best case at the outset, and amendment may be denied when sought only after an adverse ruling.'  *Riverview Health Inst. v. Med. Mut.*, 601 F.3d 505, 522 (6th Cir. 2010)."  (Def.'s Resp. to Pls.' Obj. 3, ECF No. 175.)  *Riverview* does not stand for the stated proposition; rather, the court in *Riverview* rejected the defendants' argument that "Plaintiffs' request for leave to amend is procedurally improper because their request came after the district court's ruling on Defendants' motion to dismiss." *Id.* at 520.

- "The Sixth Circuit holds that a party '**must plead its best case at the outset:** amendment may be denied when the party seeks a **second bite at the apple** following an adverse ruling.' *Riverview Health lnst. v. Med. Mut.*, 601 F.3d 505, 522 (6th Cir.

7

2010)." (Def.'s Resp. to Pls.' Obj. 4 n.1.) *Riverview* does not contain the quoted language or any similar statement.

- "*See Lawsuit Financial, LLC v. Curry*, 261 Mich. App. 579, 592 (2004) ('Conversion requires denial of plaintiff's rights to use the property.')." (Def.'s Resp. to Pls.' Obj. 9.) *Lawsuit Financial* does not contain the quoted language.

- "That quiet pivot is an admission that the conversion theory fails as pled and can survive only through amendment—another improper 'second bite at the apple.' *See Riverview Health Inst.*, 601 F.3d at 522." (Def.'s Resp. to Pls.' Obj. 9 n.3.) *Riverview* does not contain the quoted language or any similar statement.

As these excerpts indicate, Kimmel's filings contain dozens of citations that misrepresent or fabricate cases. To be clear, the Court passes no judgment on the general practice of AI-assisted legal writing. But a party who submits an AI-written filing (or a human-written filing) must take reasonable steps to ensure its contents do not mislead or deceive opposing parties and the Court. "Excessive reliance on AI generated documents, without properly confirming the validity of the citations, does not excuse false statements of law." *See Ali v. IT People Corp., Inc.*, No. 2:25-CV-10815, 2025 WL 2682622, at *2 (E.D. Mich. Sep. 19, 2025). Nor does Kimmel's pro se status excuse his conduct. *Id.*

The Court has previously warned Kimmel about the potential inaccuracies of AI-generated filings, and it appears he has taken no action to address this problem. The Court may sanction misconduct under either Rule 11 or its inherent authority. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 510–11 (6th Cir. 2002). Other courts have imposed sanctions in circumstances similar to these. *See, e.g.*, *Ali*, 2025 WL 2682622, at *2 (imposing monetary sanctions for pro se party's use of fake AI-generated citations); *Seither & Cherry Quad Cities, Inc.*

*v. Oakland Automation, LLC*, No. 23-11310, 2025 WL 2105286, at *2 (E.D. Mich. July 28, 2025) (imposing monetary sanctions for lawyers' use of fake AI-generated citations).

Accordingly,

**IT IS ORDERED** that within seven days of receipt of this Order, Defendant Paul Kimmel shall show cause in writing why the Court should not impose sanctions on him.

Dated: November 19, 2025  /s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE