UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTHAMER TAX RESOLUTION, INC.,
et al.,

    Plaintiffs,                                      Case No. 1:25-cv-579

v.                                                  Hon. Hala Y. Jarbou

PAUL KIMMEL,

    Defendant.
_____/

## ORDER

This order comes in response to pro se Defendant Paul Kimmel's pattern of submitting misleading filings to the Court. In an opinion issued August 29, 2025, the Court observed that one of Kimmel's filings contained the error-filled citations that are a hallmark of content generated by artificial intelligence (AI), and warned Kimmel that he must verify the accuracy of his citations in the future. (*See* 8/29/2025 Op. 27–28, ECF No. 128.) In a subsequent order issued November 19, 2025, the Court noted that Kimmel's recent filings still cited dozens of misrepresented or fake cases, and ordered Kimmel to explain why he should not be sanctioned for this conduct. (*See* 11/19/2025 Order, ECF No. 177.) Kimmel responded on November 24, 2025, claiming that the inaccurate citations resulted from editing errors and stylistic mistakes rather than from AI. (*See* Def.'s Resp. to Order, ECF No. 178.) For the reasons explained below, the Court finds that Kimmel violated Rule 11 and will impose monetary sanctions in the amount of $2,900.

### I. BACKGROUND

The Court first addressed the veracity of Kimmel's filings in its August 29 opinion, after Plaintiffs drew attention to several inaccurate citations in Kimmel's objection to a Report and

Recommendation (R&R).  Upon review, the Court found "that a substantial amount of the legal authority [Kimmel] purports to rely on is either mischaracterized or entirely fictitious." (8/29/2025 Op. 27.)  It explained:

> Many of the cases Kimmel cites cannot be found at the locations he provides.  (*See* Def.'s Obj. 6 n.2 (citation to *Hall v. Hall*, 584 U.S. 147 (2018)), 8 & n.3 (citation to *Baker Hughes Inc. v. S&S Chem., LLC*, No. 2:21- cv-2611, 2022 WL 1591563 (W.D. Tenn. Mar. 30, 2022) and *PFK Co. v. Protective Technologies, Inc.*, 624 F. Supp. 2d 802 (S.D. Ind. 2008)), 13 (citation to *Dearborn Heights v. Comcast*, 269 F. Supp. 3d 904 (E.D. Mich. 2017)), 29 (citations to *Brown v. Matthews Mortuary, Inc.*, 118 F.3d 1008 (4th Cir. 1997) and *United States SEC v. Miner*, 744 F.3d 1123 (9th Cir. 2014)), 12 (citation to *Stinnie v. Holcomb*, 977 F.3d 403 (4th Cir. 2020)).)  Other cases do not contain the quoted language he attributes to them.  (*See id.* at 14 (citation to *FormFactor, Inc. v. Micro-Probe, Inc.*, No. 10-3095, 2012 WL 2061520, at *4 (N.D. Cal. June 7, 2012)), 16 & n.3 (citation to *Shane Grp. v. Blue Cross*, 825 F.3d 299, 305 (6th Cir. 2016) and *Next Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 2:17-CV-00628-JRG, 2020 WL 2836778, at *3 (E.D. Tex. May 29, 2020)), 17 (citation to *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th Cir. 1993)), 18 (citation to *Ball v. Famiglio*, 396 F. App'x 836, 837 (3d Cir. 2010)), 19 (citation to *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011)), 20 (citation to *Craig v. Harney*, 331 U.S. 367, 374 (1947)), 22 (citation to *Overstreet v. Lexington-Fayette Urban Cnty. Gov't*, 305 F.3d 566, 579 (6th Cir. 2002)), 24 (citation to *Gates Rubber Co. v. Banda Chem. Indus., Ltd.*, 9 F.3d 823, 848 (l0th Cir. 1993) and *Packaging Corp. of Am. v. Croner*, 419 F. Supp. 3d 1059, 1066 (N.D. Ill. 2020)), 26 (citation to *Basicomputer*, 973 F.2d at 511 (6th Cir. 1992)).)

(*Id.* at 27–28.)  The Court noted that these fake citations were likely the result of Kimmel using generative AI tools, such as ChatGPT, to write his briefs.  As one court has explained:

> [T]he accuracy and reliability of [AI-generated] citations, quotes, and explanatory parentheticals remain utterly suspect absent a[ person]'s independent verification. . . . [C]hatbots, including legal "AI" chatbots, are large-language models (LLMs), not a true "artificial intelligence" out of the pages of science fiction.  They are not designed to answer questions factually.  They are designed to mimic patterns of words, probabilistically. When they are "right," it is because correct things are often written down in the dataset they were trained on, not because they can independently fact-check themselves in the same way a human would.  So when an LLM "explains" the holding of a case, it does so because it predictively strings together a group of words that . . . happens to represent something that is either true or false about that case.  But on the back end, all the model was meant to do was make a sentence that "looks" correct, which it did.  They are word guessers; they are trying to predict what the next words would be if that sentence appeared on the

2

internet. It has no way of "knowing" whether that sentence it created about the case's holding was in fact true or false.

*Seither & Cherry Quad Cities, Inc. v. Oakland Automation*, LLC, No. 23-11310, 2025 WL 2105286, at *1 (E.D. Mich. July 28, 2025) (footnotes omitted).

In its August 29 opinion, the Court advised Kimmel that he "is now on notice that future use of fictitious citations may result in sanctions." (8/29/2025 Op. 28.) However, Kimmel has continued to file briefs containing fictitious citations. In its November 19 order to show cause, the Court reviewed Kimmel's recent objections to an R&R and his response to Plaintiffs' objections, and identified the following misleading citations:

1. "In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525–26 (6th Cir. 2008), the Sixth Circuit held that when an employer 'immediately retaliates upon learning of the protected activity,' temporal proximity alone can establish causation because 'no other evidence is necessary to establish the causal connection.'" (Def.'s Obj. to R&R 6, ECF No. 173.) The cited case does not contain the second quotation.

2. "*Shallal v. Catholic Social Services*, 455 Mich. 604, 621 (1997), and *Stefanski v. City of Center Line*, 504 Mich. 877, 879 (2019), both hold that an employee is protected once the employer has reason to believe the employee is about to report a legal or regulatory violation." (Def.'s Obj. to R&R 7.) *Stefanski v. City of Center Line* does not appear to exist. The citation, 504 Mich. 877, leads to an interstitial page in *Berdy v. Buffa*, 504 Mich. 876, 928 N.W.2d 204, 205 (2019), which bears no relevance to this case. There is a Michigan Supreme Court case on the statute at issue called *Stefanski v. Saginaw County 911 Communications Center Authority*, No. 166663, 2025 WL 1107897 (Mich. Apr. 14, 2025), but it does not stand for the proposition that "an employee is protected once the employer has reason to believe the employee is about to report a legal or regulatory violation."

3. "*Kaufman & Payton, P.C. v. Nikkila*, 200 Mich. App. 250 (1993) held that 'objective notice' exists where the employer knows or should know that the employee is contemplating a report to a public body." (Def.'s Obj. to R&R 8 (italics added).) *Kaufman* discusses objective notice, but it does not stand for the stated proposition.

4. "*Chandler v. Dowell Schlumberger, Inc.*, 456 Mich. 395 (1998), clarifies that WPA protection attaches when an employer knows or should know that the employee's disclosure involves—or will imminently involve—a report to a public body. The focus is on the employer's awareness of impending

3

external reporting." *Chandler* contains no discussion of what an employer must be aware of for the Whistleblower's Protection Act ("WPA") to apply. (Def.'s Obj. to R&R 8.)

5. "*United States v. Garber*, 607 F.2d 92 (5th Cir. 1979), though addressing professional responsibility, underscores why such awareness was inescapable here: licensed professionals cannot feign ignorance of regulatory duties." (Def.'s Obj. to R&R 8–9.) *Garber* is not about professional responsibility; it is an appeal of a tax evasion conviction.

6. "The R&R ignored *Stefanski v. City of Center Line*, 504 Mich. 877 (2019), which reaffirms that WPA protection extends to employees 'about to report' when the employer has objective reason to know that external reporting is imminent." (Def.'s Obj. to R&R 9.) As noted above, the R&R ignored *Stefanski* because it does not exist.

7. "*Shallal v. Catholic Social Services*, 455 Mich. 604, 622 (1997) (employer understood that a report was 'a distinct possibility' where the employee raised concerns implicating legal exposure)[.]" (Def.'s Obj. to R&R 10.) *Shallal* does not contain the quoted language.

8. "*Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 251–52 (2014) (knowledge and causation may be shown by circumstantial evidence)[.]" (Def.'s Obj. to R&R 10.) *Wurtz* is about whether the WPA applies to the failure to renew a contract; it is not about knowledge and causation.

9. "Michigan and federal courts consistently recognize that retaliation claims are fact-intensive and rarely appropriate for resolution at the pleading stage. See *Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 255 (2014) (causation under the WPA 'is ordinarily a question for the fact-finder')[.]" (Def.'s Obj. to R&R 13–14.) *Wurtz* does not contain the quoted language or any similar statement; as noted above, it is purely about the application of the WPA to the failure to renew a contract.

10. "*Roulston v. Tendercare (Mich.), Inc.*, 239 Mich. App. 270, 281 (2000) ('issues of motive and intent are generally inappropriate for summary disposition')[.]" (Def.'s Obj. to R&R 14.) *Roulston* does not contain the quoted language or any similar statement.

11. "*Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 625 (6th Cir. 2013) (retaliation causation 'turns on factual context')." (Def.'s Obj. to R&R 14.) *Kuhn* does not contain the quoted language.

12. "Its tone and timing contradict any assertion of legitimate cause and exemplify the 'shifting and inconsistent explanations' that Michigan courts recognize as circumstantial evidence of retaliatory motive. *Roulston*, 239 Mich App at 281." (Def.'s Obj. to R&R 15.) *Roulston* does not contain the quoted language or any similar statement.

13. "Lothamer's own words—apologizing for the termination and offering re employment—are admissions fundamentally inconsistent with any legitimate management rationale.  Under MCL 15.362 and *Wurtz v. Beecher Metro. Dist.*, 495 Mich. 242, 255 (2014), that unrebutted evidence alone precludes dismissal of Count II at the pleading stage." (Def.'s Obj. to R&R 15–16.)  As noted above, *Wurtz* is about the application of the WPA to the failure to renew a contract, and has no bearing on evidentiary standards or legitimate management rationales.

14. "See *Routh Packing Co. v. U.S. Dep't of Agric.*, 246 F.3d 850, 855 (6th Cir. 2001) (courts must consider the 'complaint in its entirety')." (Def.'s Obj. to R&R 16.)  The case at that citation has a different name (*EEOC v. J.H. Routh Packing Co.*) and does not contain the quoted language or any similar statement.

15. "At the Rule 12(b)(6) stage, the Court must accept the pleaded facts as true and draw all reasonable inferences in Defendant's favor.  *See* **Jones v. City of Allen Park**, 167 Mich. App. 300, 306 (1988) (WPA claim sufficient where discharge closely followed report of wrongdoing)." (Def.'s Obj. to R&R 16.)  The citation is to an interstitial page in *Matter of Ricks*, 167 Mich. App. 285, 421 N.W.2d 667 (1988), which is about juvenile commitment.  There is a WPA case called *Jones v. City of Allen Park*, 167 F. App'x 398 (6th Cir. 2006), but the court in *Jones* did not hold that the WPA claim was sufficient.

16. "Premature dismissal — especially **with prejudice** — would contradict both that rule and the WPA's remedial purpose 'to remove barriers and fear of retaliation for those who report wrongdoing.'  *Dudewicz v. Norris-Schmid, Inc.*, 443 Mich. 68, 77 (1993)."  (Def.'s Obj. to R&R 17.)  *Dudewicz* does not contain the quoted language.

17. "Under Michigan law, constructive fraud arises from a breach of legal or equitable duty 'which, irrespective of moral guilt, the law declares fraudulent because of its tendency to deceive or violate confidence.' *Black*, 412 Mich. at 118; *Wirsing*, 573 B.R. at 920." (Def.'s Obj. to R&R 18–19.)  *Black* does not contain the quoted language.  *Wirsing* does not appear to exist; the citation is to an interstitial page in *Matter of Staggs*, 573 B.R. 898, 920 (Bankr. N.D. Ala. 2017).

18. "Michigan law permits equitable restitution where a party 'retains the benefits of another's services through fraud, coercion, or mistake.' *Olitkowski v. St. Casimir's S&L Ass'n*, 302 Mich. 303, 309 (1942); *Wolverine Ins. Co. v. Detroit Bank & Trust*, 420 Mich. 176, 189 (1984)." (Def.'s Obj. to R&R 21.)  Neither case contains the quoted language.  The case at 420 Mich. 176, which is actually entitled *Gen. Elec. Credit Corp. v. Wolverine Ins. Co.*, is not about equitable restitution.

19. "In *U.S. ex rel. Marlar v. BWXT Y-12, LLC*, 525 F.3d 439 (6th Cir. 2008), the Sixth Circuit affirmed dismissal of the fraud claim for lack of Rule 9(b) specificity but reversed dismissal of the retaliation claim. The court held that a plaintiff 'need only allege facts which, taken as true, give rise to a plausible inference that the employer knew of the protected activity and retaliated because of it.' *Id.* at 449." (Def.'s Obj. to R&R 23.) *Marlar* does not contain the quoted language.

20. "The Sixth Circuit has repeatedly held that temporal proximity plus abrupt adverse action permits a plausible inference of employer knowledge and retaliatory motive at the pleading stage. *McKenzie v. Bel/South Telecomms., Inc.*, 219 F.3d 508, 518 (6th Cir. 2000)[.]" (Def.'s Obj. to R&R 25.) *McKenzie* does not stand for the stated proposition, nor does it contain any discussion of how temporal proximity supports an inference of knowledge or motive.

21. "The timing of the filings is irrelevant; defamation attaches upon any false statement 'communicated to a third party.' *Doe v. Mills*, 212 Mich App 73, 96 (1995)." (Def.'s Obj. to R&R 28.) *Doe* does not contain the quoted language, and is not about defamation.

22. "Statements made by counsel on behalf of a client are imputed to the client under established agency law. See *Pace v. Swerdlow*, 519 F.3d 1067, 1073 (10th Cir. 2008)[.]" (Def.'s Obj. to R&R 29.) *Pace* does not contain any discussion of agency law or the attribution of counsel's statements to a client.

23. "[E]ach publication constitutes a separate act of defamation causing independent injury. *See Pettigrew v. McNally*, 270 Mich App 670, 680 (2006) (each repetition is separately actionable)." (Def.'s Obj. to R&R 30.) *Pettigrew* does not appear to exist; the citation is to an interstitial page in *Face Trading Inc. v. Dep't of Consumer & Indus. Servs.*, 270 Mich. App. 653, 668, 717 N.W.2d 377, 386 (2006), which is not about defamation.

24. "'A party must plead its best case at the outset, and amendment may be denied when sought only after an adverse ruling.' *Riverview Health Inst. v. Med. Mut.*, 601 F.3d 505, 522 (6th Cir. 2010)." (Def.'s Resp. to Pls.' Obj. 3, ECF No. 175.) *Riverview* does not stand for the stated proposition; rather, the court in *Riverview* rejected the defendants' argument that "Plaintiffs' request for leave to amend is procedurally improper because their request came after the district court's ruling on Defendants' motion to dismiss." *Id.* at 520.

25. "The Sixth Circuit holds that a party '**must plead its best case at the outset:** amendment may be denied when the party seeks a **second bite at the apple** following an adverse ruling.' *Riverview Health Inst. v. Med.*

6

*Mut.*, 601 F.3d 505, 522 (6th Cir. 2010)." (Def.'s Resp. to Pls.' Obj. 4 n.1.) *Riverview* does not contain the quoted language or any similar statement.

26. "*See Lawsuit Financial, LLC v. Curry*, 261 Mich. App. 579, 592 (2004) ('Conversion requires denial of plaintiff's rights to use the property.')." (Def.'s Resp. to Pls.' Obj. 9.) *Lawsuit Financial* does not contain the quoted language.

27. "That quiet pivot is an admission that the conversion theory fails as pled and can survive only through amendment—another improper 'second bite at the apple.' *See Riverview Health Inst.*, 601 F.3d at 522." (Def.'s Resp. to Pls.' Obj. 9 n.3.) *Riverview* does not contain the quoted language or any similar statement.

(11/19/2025 Order 2–8 (numbering added)). As before, Kimmel's fake citations appear to be the result of filing AI-generated briefs without proper review. Thus, the Court ordered Kimmel to explain why it should not sanction him for this repeated misconduct.

## II. KIMMEL'S RESPONSE

In response, Kimmel acknowledges that "[s]everal citations or quotations in [his] Objection were inaccurate." (Def.'s Resp. to Order 2.) He does not admit to using AI, though; he avers "that some of those mistakes arose from relying on secondary summaries or search-engine case pages rather than the official opinion." (*Id.*) Ultimately, he characterizes his errors as "occasional technical mistakes [that] are unavoidable, but . . . never intentional." (*Id*. at 1.) He states that he will take steps in the future to verify his citations and avoid misrepresenting cases. However, as explained below, the Court finds Kimmel's response lacking.

As an initial matter, Kimmel's response itself contains misleading citations. Kimmel twice cites *Michaels Building Co. v. Ameritrust Co.*, 848 F.2d 674, 681 (6th Cir. 1988), for the proposition that "Rule 11 is not a mechanism for penalizing losing arguments." (Def.'s Resp. to Order 5; *see id.* at 7 (similar).) However, the entire discussion of Rule 11 contained in *Michaels* is the following:

7

> Attorneys who take advantage of the liberal pleading provisions of Rule 8 by commencing a lawsuit in a desperate attempt to unearth a cause of action through discovery must be checked by the ethics provisions of Fed. R. Civ. P. 11.
>
> [Excerpt of Rule 11.]
>
> In this case, therefore, after discovery has been launched, if plaintiffs are still unable to plead a sufficient factual basis for the allegations made against defendants, the spectre of Rule 11 sanctions should guide the actions of plaintiffs' counsel.

848 F.2d at 680–81. The case does not mention using Rule 11 to penalize losing arguments, nor does it in any way limit the scope of sanctionable conduct. Needless to say, this misleading citation makes it difficult to credit Kimmel's assurances that he will ensure the accuracy of his filings going forward.

As to the errors in his previous filings, Kimmel claims that he lacks the time to address each one, but he does not generally dispute the Court's finding that his brief is filled with misleading citations. Instead, he notes generally that the incorrect quotations were largely caused by "quoting from secondary sources . . . that paraphrase the law rather than reproduce the official court opinions themselves." (Def.'s Resp. 2.) However, Kimmel does not point to the particular sources he used for each quotation or provide any other evidence for this assertion. Kimmel also attempts to explain two specific errors identified by the Court, but—as explained below—even that minimal explanation is lacking.

Kimmel first discusses *Riverview*, a case that he mischaracterized repeatedly in his filings (see items 24, 25, and 27 on the above list). Kimmel claims that, although the quoted language he attributed to *Riverview* admittedly does not appear in the case, "quotation marks were used for emphasis, not as an attempt to attribute fabricated language to the case." (Def.'s Resp. to Order 1.) It is difficult to believe that Kimmel does not understand the meaning of quotation marks, especially given that the Court had previously admonished him for citing "cases [that] do not contain the quoted language he attributes to them." (8/29/2025 Op. 27.) Furthermore, this

8

explanation does not account for why he attributed to *Riverview* a holding that it does not contain. Kimmel states that his "intent was simply to emphasize [his] own synthesis of [*Riverview*'s] holding—namely, that a party does not receive a do-over mid-litigation simply because they are losing." (Def.'s Resp. to Order 1.) But *Riverview* says no such thing. To the contrary, the court in *Riverview* explicitly rejected the defendants' argument that "Plaintiffs' request for leave to amend is procedurally improper because their request came after the district court's ruling on Defendants' motion to dismiss." 601 F.3d at 520–21. Kimmel does not explain how his "technical" mistake could lead him to repeatedly cite *Riverview* for a principle that the case essentially contradicts.

Second, Kimmel discusses "*Stefanski v. City of Center Line*, 504 Mich. 877 (2019)," a non-existent case that he repeatedly cited. Kimmel avers that he meant to cite "the Michigan Supreme Court's May 1, 2025 order in *Stefanski v. Saginaw County 911 Communications Center Authority* and the underlying Court of Appeals opinion." (Def.'s Resp. to Ord. 3.) It does not appear that the Supreme Court issued a May 1, 2025, order in that case, *see Stefanski v. Saginaw County 911 Commc'ns Ctr. Auth.*, No. 166663 (Mich. 2023); perhaps that order is another AI hallucination. Even if the Court assumes Kimmel was referring to the April 14 Supreme Court opinion in that case—*Stefanski v. Saginaw Cnty. 911 Commc'ns Ctr. Auth.*, No. 166663, 2025 WL 1107897 (Mich. Apr. 14, 2025)—he fails to explain how he ended up citing a fictitious case instead. Kimmel states that he did not have the official reporter citation for the opinion, so he "relied on an online source that reproduced the opinion's text but paired it with an incomplete or incorrect reporter reference." (Def.'s Resp. to Order 3.) Thus, he says, "a 'ghost citation' almost certainly appeared later during integration and formatting of the final brief." (*Id*. at 3–4.) But the lack of an official reporter citation does not explain how this "ghost citation"—with a different case name,

9

reporter citation, and year—ended up in his brief. Nor does he indicate what online source he mistakenly relied upon.

Putting aside the incorrect name and reporter number, the version of *Stefanski* that Kimmel supposedly intended to cite does not even stand for the proposition for which he cited it. Kimmel explains that he interpreted *Stefanski* as indicating that "when an employee's conduct implicates 'a law,' that is enough to create a fact question and defeat summary disposition." (Def.'s Resp. to Ord. 4.) True, but this is not how Kimmel described *Stefanski* in his earlier filing. There, Kimmel cited *Stefanski* twice for the proposition "that WPA protection extends to employees 'about to report' when the employer has objective reason to know that external reporting is imminent." (Def.'s Obj. to R&R 9; *see id.* at 7 (similar)). In other words, Kimmel did not cite *Stefanski* to argue that the scope of the WPA extends to reports of common law violations; he cited it for a principle about employer knowledge, which it does not discuss. Kimmel also points to the Michigan Court of Appeals's opinion on remand, but that opinion likewise does not discuss when an employer has reason to know an employee is about to report. *See Stefanski v. Saginaw Cnty. 911 Commc'ns Ctr. Auth.*, No. 364851, 2025 WL 2348919 (Mich. Ct. App. Aug. 13, 2025). Thus, Kimmel's explanation does not account for his misleading citation.

Even if the Court were to accept all of the claims in Kimmel's response—that he did not understand how to use quotation marks, quoted paraphrases from secondary sources, and accidentally added "ghost" reporter citations—these claims do not explain most of his (over two dozen) errors. To illustrate: *Michaels*, as noted above, does not suggest that incorrect legal arguments are undeserving of sanctions; *Stefanski*, as noted above, does not discuss an employer's knowledge (listed items 2, 6); *Riverview*, as noted above, expresses the opposite of the proposition for which Kimmel cites it (items 24, 25, 27); *Kaufman*, cited for its definition of objective notice,

10

does not define objective notice (item 3); *Chandler*, cited for the proposition that WPA protection attaches based on an employer's awareness, does not discuss employer awareness (item 4); *Garber*, cited for its discussion of professional responsibility, does not discuss professional responsibility (item 5); *Wurtz*, cited for the proposition that "knowledge and causation may be shown by circumstantial evidence" and "that retaliation claims are fact-intensive and rarely appropriate for resolution at the pleading stage," does not discuss knowledge, causation, or the fact-intensive nature of retaliation claims (items 8, 9); *Roulston*, cited for its discussion of an employer's "shifting and inconsistent explanations," does not discuss shifting or inconsistent explanations (item 10); *Wurtz*, cited for its discussion of "legitimate management rationales" for firing and what evidence "precludes dismissal of" an WPA claim, does not discuss management rationales or what evidence precludes dismissal (item 13); *Routh*, cited for a quotation that it does not contain, has a different name than the one given by Kimmel (item 14); *Jones*, cited for the proposition that a "WPA claim [is] sufficient where discharge closely followed report of wrongdoing," has a different court, year, and reporter number than the one given by Kimmel and does not indicate that the WPA claim at issue was sufficient (item 15); *Wirsing* and *Wolverine Ins.* do not exist (items 17, 18); *McKenzie*, cited for the proposition "that temporal proximity plus abrupt adverse action permits a plausible inference of employer knowledge and retaliatory motive," does not discuss when temporal proximity implies an employer's knowledge or motive (item 20); [1] *Doe*, cited for its definition of defamation, is not about defamation (item 21); *Pace*, cited for the principles that "[s]tatements made by counsel on behalf of a client are imputed to the client under established agency law," does not discuss counsels' statements or agency law (item

---

[1] Kimmel argues that his mistaken portrayal of this case boils down to a "[d]ispute[] over the reach or procedural posture of a case—such as whether *McKenzie* applies at the pleading stage." (Def.'s Resp. 5.) However, the problem is not that Kimmel tried to apply *McKenzie* to the pleading stage; the problem is that Kimmel cited *McKenzie* for a proposition that the case does not in any way support.

11

22); and *Pettigrew* does not exist (item 23). Kimmel does not even attempt to explain how these errors occurred.

To be clear, the Court does not view formatting mistakes or occasional accidental misquotes as sanctionable conduct. But Kimmel's briefs are so riddled with incorrect citations that none of the case law in them can be relied upon, and checking them for accuracy wastes the time of opposing counsel and the Court. Although Kimmel denies that his fake citations come from generative AI, "[t]he Court finds this response inadequate and not credible," given that Kimmel "fails to explain where or how he found or created the fictitious case[s] and quotation[s]." *United States v. Hayes*, 763 F. Supp. 3d 1054, 1066 (E.D. Cal. 2025). Regardless, "[t]he Court need not make any finding as to whether [Kimmel] actually used generative AI to draft any portion of his [filings]" in order to sanction the use of fake citations. *Id.* Indeed, if Kimmel has created the fake citations himself, that would suggest an intentional attempt to mislead the Court—a more serious transgression than carelessly filing AI-generated documents. Ultimately, wherever the fake citations originated, "[t]he filing of complaints, papers, or other motions without taking the necessary care in their preparation is a[n] . . . abuse of the judicial system, subject to . . . sanction." *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 398 (1990).

### III. RULE 11 SANCTIONS

Rule 11 requires lawyers or unrepresented parties to certify that their "claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law," and that "the factual contentions [in their filing] have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(2)–(3). "If, after notice and a reasonable opportunity to respond, the court determines that [Rule 11] has been violated, the court may . . . impose an appropriate sanction

12

upon the attorneys, law firm, or parties that have violated [Rule 11] or are responsible for the violation." *Id.* at 11(c)(1). "[T]he test for imposition of Rule 11 sanctions is whether the [party]'s conduct was reasonable under the circumstances." *Ridder v. City of Springfield*, 109 F.3d 288, 293 (6th Cir. 1997). "Rule 11 sanctions may be imposed regardless of whether an error was made in good or bad faith." *Seither & Cherry Quad Cities, Inc. v. Oakland Automation, LLC*, No. 23-11310, 2025 WL 2105286, at *2 (E.D. Mich. July 28, 2025). "[T]here is no requirement that a full evidentiary hearing be held before imposing sanctions. All that is required is that the party be given notice and an opportunity to be heard." *DiPonio Const. Co. v. Int'l Union of Bricklayers & Allied Craftworkers, Loc. 9*, 687 F.3d 744, 752 (6th Cir. 2012) (cleaned up).

The Court finds that Kimmel's conduct violates Rule 11. *Cf., e.g., Seither*, 2025 WL 2105286, at *2 (imposing Rule 11 sanctions for misleading AI-generated citations); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025) ("A fake opinion is not 'existing law' and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law." (quoting *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023)); *Mata*, 678 F. Supp. 3d at 466 (imposing sanctions for submission of AI-generated case law); *Hayes*, 763 F. Supp. 3d at 1067 ("Citing nonexistent case law or misrepresenting the holdings of a case is making a false statement to a court. It does not matter if [generative AI] told you so." (alteration in original) (quoting Maura R. Grossman, Paul W. Grimm, & Daniel G. Brown, *Is Disclosure and Certification of the Use of Generative AI Really Necessary?*, 107 Judicature 68, 75 (2023))); *Dehghani v. Castro*, 782 F. Supp. 3d 1051, 1057 (D.N.M. 2025) (submitting fake citations violates Rule 11); *Ferris v. Amazon.com Servs., LLC*, 778 F. Supp. 3d 879, 881 (N.D. Miss. 2025) ("Mr. Ferris violated Rule 11 by submitting false citations to the Court—first, in his complaint; then, after being put on notice by Defendant, in his subsequent

13

filings."). Alternatively, because the Court finds that Kimmel acted in bad faith by failing to ensure the accuracy of his filings, it concludes that his conduct is sanctionable under its inherent powers. *See First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 511 (6th Cir. 2002).

It is true that Kimmel is proceeding pro se, and lacks the experience or resources available to an attorney. And the Supreme Court has acknowledged that, under Rule 11, "the legal inquiry that can reasonably be expected from a party [before filing a brief] may vary from case to case." *Bus. Guides, Inc. v. Chromatic Commc'ns Enters., Inc.*, 498 U.S. 533, 550 (1991). Nevertheless, Rule 11 "imposes on any party who signs a pleading, motion, or other paper . . . an affirmative duty to conduct a reasonable inquiry into the facts and the law before filing." *Id.* at 551. And "[p]ro se plaintiffs are not exempt from Rule 11 sanctions simply because they are not represented by counsel." *Graham v. Fleissner L. Firm*, No. 1:08-CV-00031, 2008 WL 2169512, at *4 (E.D. Tenn. May 22, 2008) (citing *Bus. Guides, Inc. v. Chromatic Commc'ns. Enters.*, 498 U.S. 533, 564 (1991) ("Requiring pro se litigants to make the Rule 11 certification ensures that, in each case, at least one person has taken responsibility for inquiry into the relevant facts and law.")). The frequency of Kimmel's falsehoods indicates that he failed to make a reasonable inquiry into the veracity of his citations, and this failure is sanctionable regardless of whether he is represented by counsel.

"A sanction imposed under [Rule 11] must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." Fed. R. Civ. P. 11(c)(4). The Court finds that the proper sanction in this instance is a monetary fine of $100 for each false citation, to be paid to the Court. *Cf. Ali v. IT People Corp., Inc.*, No. 2:25-CV-10815, 2025 WL 2682622, at *3 (E.D. Mich. Sept. 19, 2025) (sanctioning pro se party $200 for each false citation). In the list above, the Court identified 27 instances of false citations. However, because items 17

14

and 18 each contain two false citations, the total number of violations is 29. Kimmel's response to the order to show cause does not take issue with the Court's list of erroneous citations. Thus, the Court will impose a sanction of $2,900. If Kimmel continues to submit filings containing misleading or fictitious citations, the Court will double the monetary sanction per violation for each additional time that it has to address the issue.[2]

## IV. CONCLUSION

**IT IS ORDERED** that as a sanction for violations of Rule 11, Kimmel is required to pay $2,900.00 to the Clerk of Court within 7 days of receipt of this order.

Dated: December 1, 2025                           /s/ Hala Y. Jarbou
                                                  HALA Y. JARBOU
                                                  CHIEF UNITED STATES DISTRICT JUDGE

---

[2] The Court cannot at this time impose a sanction on Kimmel for the erroneous citations to *Michaels* in his response to the Court's show cause order, because he has not been given prior notice under Rule 11 about the errors in that filing. However, if the Court has occasion to sanction Kimmel in the future, it will count the *Michaels* citations as instances of Rule 11 violations when determining the monetary fine.