UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTHAMER TAX RESOLUTION INC.,
et al.,

    Plaintiffs,

v.

PAUL KIMMEL,

    Defendant.
_____/

Case No. 1:25-cv-579

Hon. Hala Y. Jarbou

## **OPINION**

This is a breach of contract suit brought by a tax resolution firm against its former employee. The factual background is detailed in numerous prior opinions (*e.g.*, ECF No. 188) and need not be recounted here. Before the Court are three motions: Defendant Paul Kimmel's motion to dismiss Plaintiffs' (collectively "Lothamer's") conversion claims under Rule 12(b)(6) (ECF No. 185), Kimmel's motion for leave to amend his counterclaims (ECF No. 187), and Lothamer's motion to dismiss Kimmel's conversion counterclaim under Rule 12(b)(6) (ECF No. 193). The Court will deny Kimmel's motion to amend because his proposed amendments would be futile. The Court will also deny both motions to dismiss because neither parties' conversion claims are preempted by the federal Copyright Act.

### I. LEGAL STANDARDS

**A. Rule 12(b)(6)**

A complaint may be dismissed for failure to state a claim if it does not "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels

and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The Court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. "When considering a motion to dismiss under Rule 12(b)(6), courts "construe the complaint in the light most favorable to the plaintiff, accepting all well-pleaded factual allegations as true." *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017).

**B. Rule 15(a)**

When more than 21 days have passed since a plaintiff responded to the defendant's counterclaims, the defendant can only amend the counterclaims with consent of the plaintiff or leave of the Court. Fed. R. Civ. P. 15(a); *see Jennings v. Allstate Vehicle & Prop. Ins. Co.*, No. 1:20-CV-464, 2021 WL 12300385, at *3 (S.D. Ohio Feb. 17, 2021) ("An amendment to add a counterclaim is governed by Fed. R. Civ. P. 15."). "The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Denial may be appropriate, however, where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002) (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

2

## II. ANALYSIS

**A. Motion for Leave to Amend**

In its opinion issued December 2, 2025 (ECF No. 188), the Court dismissed Kimmel's counterclaims for retaliation in violation of Michigan's Whistleblowers' Protection Act (WPA), Mich. Comp. Laws §§ 15.361–369, and the False Claims Act (FCA), 31 U.S.C. §§ 3729–3733. Kimmel now moves for leave to amend his counterclaims with additional factual allegations.[1] But the amended counterclaims would not survive a motion to dismiss, so the Court will deny the motion.

Kimmel initially brought a counterclaim for retaliation under the WPA, alleging that Lothamer terminated him because he intended to report the company's purportedly unlawful acts. (*See* 2d Am. Countercls., ECF No. 125, PageID.1685–1687.) In its December 2 opinion, the Court dismissed the WPA claim because Kimmel did not allege facts indicating that he put Lothamer on notice that he was going to report the company. *See Kaufman & Payton, P.C. v. Nikkila*, 503 N.W.2d 728, 732 (Mich. Ct. App. 1993) ("[A]n employer is entitled to objective notice of a report or a threat to report by the whistleblower.") Kimmel now seeks to rectify that pleading deficiency with the following additional allegations:

> During the February 14, 2025 meeting, [Kimmel] told COO Brian Lorencen that [Lothamer] needed to immediately stop altering customer e-signatures, re-capture signatures and authorizations, suspend use of the broken time-keeping system and use temporary manual methods until it was fixed, and make a full disclosure to regulators. [Kimmel] stated that the failures originated in Vartoogian's fundamentally defective architecture and amateur implementation of the portal and related systems and that his conduct amounted to malpractice for which [Lothamer] could recover if fines or penalties resulted. [Kimmel] recommended corrective action and self-reporting as the appropriate course. [Kimmel] asked Lorencen to help persuade CEO Jesse Lothamer that these steps were necessary and manageable. Lorencen replied, "What makes you think Jesse will listen to me?" [Kimmel] also raised Vartoogian's portal failures and

---

[1] Because Lothamer has not indicated its position on Kimmel's motion to amend, the Court evaluates the motion as if Lothamer has not consented.

>malpractice concerns independently with both [Jesse] Lothamer and Consavage on other occasions.

(Proposed Am. Countercls., ECF No. 187-1, PageID.2464.)

These allegations are insufficient to state a claim under the WPA because they indicate only that Kimmel told Lothamer it should self-report, not that he told Lothamer *he* would make a report if the company failed to do so.  The Michigan Supreme Court has held that a plaintiff who "wanted defendant to . . . report and was upset that it would not" had not sufficiently put her employer on notice of her intent to report because "[t]here is a legally significant distinction between being 'about to report . . . a suspected violation of a law' and merely wanting someone else to so report." *Rivera v. SVRC Indus., Inc.*, 959 N.W.2d 704, 705 (Mich. 2021) (quoting Mich. Comp. Laws § 15.362).  Based on Kimmel's allegations, Lothamer was only on notice that Kimmel wanted the company to report, not that he was about to report.  Thus, his proposed amended WPA counterclaim fails to state a claim.

Kimmel also initially brought an FCA retaliation claim, alleging that Lothamer fraudulently obtained a loan from the federal government and then fired Kimmel because he discovered and opposed the company's fraud.  (2d Am. Countercls., PageID.1707–1708.)  The Court dismissed the claim because Kimmel did not allege that Lothamer was on notice of his belief that the company had violated the FCA.  In his proposed amended counterclaims, Kimmel adds the following allegations:

>During February and March 2025, [Kimmel] was investigating and opposing conduct he reasonably believed involved violations of federal-program requirements and fraud. Consistent with that protected activity, [Kimmel] raised compliance, remediation, and potential reporting concerns with [Lothamer]'s senior leadership. On February 14, 2025, [Kimmel] told COO Brian Lorencen that the company needed to halt non-compliant billing practices and altered signatures, correct the time-keeping failures, and pursue self-reporting and remediation to return to compliance. During this same period, senior officer Tammy Consavage informed [Kimmel] that layoffs had occurred during the PPP loan period, that Huntington Bank had warned of terminating ACH processing, and that the

4

>company had repeatedly failed PCI-compliance scans. These disclosures reflected that management was aware of ongoing compliance failures and federal-funds issues. On March 7, 2025, [Kimmel] again raised the need for corrective action with both Lorencen and CEO Jesse Lothamer, and [Lothamer] terminated the entire IT team, including [Kimmel]. These allegations reflect protected activity and employer knowledge under 31 U.S.C. § 3730(h).

(Proposed Am. Countercls., PageID.2465.)

These allegations are insufficient to establish employer notice.  Kimmel's vague statement that he "raised compliance, remediation, and potential reporting concerns" does not indicate that he opposed any violation of the FCA.  And even if Kimmel "told COO Brian Lorencen that the company needed to halt non-compliant billing practices and altered signatures [and] correct the time-keeping failures," none of these issues are related to the FCA.  Finally, although Kimmel's allegation that "Tammy Consavage informed [Kimmel] that layoffs had occurred during the PPP loan period" does relate to the alleged FCA violations, it does not establish Lothamer's awareness of Kimmel's *opposition* to the company's practices.  Thus, Kimmel's proposed amended FCA counterclaim fails to state a claim.

In sum, the Court will deny the motion for leave to amend as futile.

**B. Kimmel's Motion to Dismiss**

Lothamer brings claims for common-law and statutory conversion,[2] alleging that Kimmel unlawfully took home copies of its software and refused to return them after his employment ended.  Kimmel argues that Lothamer's claim is preempted by the federal Copyright Act, which bars state claims asserting "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright . . . in works of authorship that . . . come within the subject matter of copyright." 17 U.S.C. § 301(a).  A state law claim is preempted if it concerns the

---

[2] *See* Mich. Comp. Laws § 600.2919a.

5

same subject matter as the Copyright Act and is equivalent to a claim under the Copyright Act. *See Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001). "Equivalency exists if the right defined by state law may be abridged by an act which in and of itself would infringe one of the exclusive rights [in the Copyright Act]." *Id.* at 456. But equivalency does not exist if the state claim contains "an extra element" that "changes the nature of the action so that it is qualitatively different from a copyright infringement claim." *Id.*

Kimmel argues that Lothamer's conversion claims are preempted because they allege violations of the Copyright Act—namely, the unauthorized copying and retention of software. Lothamer does not dispute that software is copyrightable, *see, e.g.*, *Quinn v. City of Detroit*, 23 F. Supp. 2d 741, 748 (E.D. Mich. 1998), and therefore that the conversion claims fall within the subject matter of the Copyright Act. But Lothamer contends that its conversion claims are not equivalent to copyright claims because they are based only on Kimmel's *retention* of its software, not his copying of it. The Court agrees.

The exclusive rights protected by the Copyright Act are those of "reproduction, performance, distribution [and] display." *Wrench*, 256 F.3d at 456. By contrast, the Copyright Act does not provide a remedy for unauthorized *possession* of a person's copyrighted work. *See William A. Graham Co. v. Haughey*, 568 F.3d 425, 440 (3d Cir. 2009) ("[P]ossession of a copy of a work alone does not constitute copyright infringement . . . ."); *Starnet Dev., Inc. v. Fabiano*, No. 96-C-0339-S, 1996 WL 529459, at *2 (D. Utah July 26, 1996) ("[P]ossession of a copy of [a] protected work after termination of employment does not constitute copyright infringement[.]"); *Rosner v. Codata Corp.*, 917 F. Supp. 1009, 1018–19 (S.D.N.Y. 1996) (maintaining website derivative of copyrighted work does not constitute infringement because "mere maintenance of a copy is not copying"); *Dowdey v. Phoenix Films, Inc.*, No. 78 CIV. 699-CSH, 1978 WL 951, at

6

*5 (S.D.N.Y. July 24, 1978) ("[T]o the extent that plaintiff characterizes the infringement as defendant's unlawful withholding of the film, that claim is not cognizable under the copyright statute, which seeks to benefit authors for the uses, rather than non-uses to which their works are put."). Here, because Lothamer's conversion claims for unauthorized retention of its software are not cognizable under the Copyright Act, they are not preempted.[3]

### C. Lothamer's Motion to Dismiss

Kimmel brings a counterclaim against Lothamer for statutory conversion, alleging that the company has "retained and exercised control over" Kimmel's "custom software, proprietary systems, and architectural work product." (2d Am. Countercls., PageID.1703.) Lothamer argues that this counterclaim is preempted because it covers the same subject matter as, and is equivalent to a claim under, the Copyright Act. However, as discussed above, a conversion claim based on *retention* of software is not preempted because the Copyright Act does not create a right to exclusive possession. Thus, for the same reasons the Court will deny Kimmel's motion to dismiss, it will also deny Lothamer's motion to dismiss.

### III. CONCLUSION

The Court will deny Kimmel's motion to amend and deny both parties' motions to dismiss. An order will enter in accordance with this Opinion.

Dated: February 9, 2026       /s/ Hala Y. Jarbou
                              HALA Y. JARBOU
                              CHIEF UNITED STATES DISTRICT JUDGE

---

[3] Kimmel also argues that Lothamer's conversion claims are displaced by the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws §§ 445.1901–1910, but the Court will not address this argument because it is outside the scope of the requested briefing. (*See* ECF No. 188 (requesting briefing related to Copyright Act preemption).)