UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTHAMER TAX RESOLUTION, INC.,
et al.,

      Plaintiffs,

v.

PAUL KIMMEL,

      Defendant.

_____/

Hon. Hala Y. Jarbou

Case No. 1:25-cv-579

## ORDER

The Court has before it the following motions: (1) Plaintiffs' Motion for Leave to File a First Amended Complaint (ECF No. 213); (2) Defendant's Motion for Leave to File Third Amended Answer and Counterclaim (ECF No. 226); and (3) Defendant's Motion for Leave to File Supplemental Counterclaim (ECF No. 236). Familiarity with the previous orders, reports and recommendations, and opinions issued in this matter setting forth the background, procedural history of the case, and rulings is assumed.

### I.  Motion Standards

Pursuant to Fed. R. Civ. P. 15(a)(2), "a court should freely give leave [to amend] when justice so requires." A court may deny leave "in cases of undue delay, undue prejudice to the opposing party, bad faith, dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, or futility." *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Whether to allow an amendment is a matter committed to the district court's discretion. *General Elec. Co. v. Sargent & Lundy*, 916 F.2d 1119, 1130 (6th Cir. 1990).

Rule 15(d) of the Federal Rules of Civil Procedure provides that "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). In contrast to a motion to amend, a motion to supplement seeks to add allegations pertaining to events arising after the original complaint was filed. *Murphy v. Grenier*, No. 07-15248-DT, 2009 WL 1044832, at *19 (E.D. Mich. Apr. 20, 2009), *aff'd*, 406 F. App'x 972 (6th Cir. 2011). Courts have "'broad discretion' to allow or deny supplemental pleadings." *Lawrence v. Parker*, No. 1:09-CV-95, 2019 WL 5703388, at *1 (W.D. Mich. Sept. 16, 2019) (quoting *Northeast Ohio Coal. for the Homeless v. Husted*, 837 F.3d 612, 625 (6th Cir. 2016)). A court confronted with a motion to supplement considers essentially the same factors that apply to a motion to amend: "prejudicial delay, bad faith or dilatory motive by the moving party, failure to cure deficiencies by previous amendment, and futility." *Stryker Corp. v. XL Ins. Am., Inc.*, No. 1:03-CV-51, 2013 WL 5533609, at *5 (W.D. Mich. Oct. 7, 2013) (citing *Bromley v. Mich. Educ. Ass'n-NEA*, 178 F.R.D. 148, 153–54 (E.D. Mich. 1998)). However, because supplementation may be used to add new claims and defendants, a court must ensure some linkage between the supplemented and original claims. *Imelmann v. Mich. Dep't of Corrs.*, No. 12-CV-10671, 2012 WL 2917514, at *1 (E.D. Mich. July 17, 2012).

When a scheduling order has been entered, as is the case here, and a party moves to amend its pleading after the deadline established by the scheduling order, the moving party must also show "good cause" as required by Federal Rule of Civil Procedure 16(b)(4) for failure to seek leave to amend earlier. *Commerce Benefits Grp., Inc. v. McKesson Corp.*, 326 F. App'x 369, 376 (6th Cir. 2009). To satisfy the "good cause" requirement, a plaintiff must show that, in spite of his diligence, he could not have met the original deadline for amending his complaint. *Leary v.*

*Daeschner*, 349 F.3d 888, 907 (6th Cir. 2003); *see Korn v. Paul Revere Life Ins. Co.*, 382 F. App'x 443, 450 (6th Cir. 2010) (stating that to satisfy the *Leary* standard, a plaintiff must "explain why he failed to move for the amendment at a time that would not have required a modification of the scheduling order"). In addition to good cause, a court must consider "whether the opposing party will suffer prejudice by virtue of the amendment." *Leary*, 349 F.3d at 906. Lack of prejudice, however, is not a substitute for good cause. Even if an amendment would not prejudice the nonmoving party, a plaintiff must still establish the requisite good cause for failing to amend within the time for doing so in the scheduling order. *Korn*, 382 F. App'x at 450; *see also Lacer v. Toyota of Bowling Green*, No. 1:18-CV-00013, 2018 WL 5815567, at *3 (W.D. Ky. Nov. 6, 2018) ("[T]he movant who fails to show 'good cause' will not be accorded relief under Rule 16(b)(4) merely because the opposing party will not suffer substantial prejudice because of the modification of the scheduling order.").

## II.  Discussion

### A.    Plaintiffs' Motion

Through their proposed amendment, Plaintiffs seek to add allegations to their existing claims, cure pleading deficiencies in previously-dismissed claims, and add a new claim for breach of fiduciary duty. In addition, the proposed amendment adds a new Defendant, Dumpster Fires Media, LLC d/b/a Cheap Tax Solutions (Cheap Tax Solutions), the entity through which Defendant conducts his allegedly competing business, for purposes of the Defend Trade Secrets Act (DTSA) and Michigan Uniform Trade Secrets Act (MUTSA) claims.

Because Plaintiffs filed their motion for leave to amend within the deadline set by the January 6, 2026 Case Management Order (CMO) (ECF No. 202), they need only satisfy the

3

standard applicable for motions to amend under Rule 15(a)(2). In spite of Defendant's arguments, the Court discerns no real issue with any *Foman* factor other than futility.

### 1.    Undue Delay

Although there is no dispute that Plaintiffs filed their motion to amend by the February 27, 2026 deadline for motions for leave to amend pleadings, Defendant contends that Plaintiffs' motion should be denied, or at least allowed only to the extent it relates to the credential capture code discovered in mid-February 2026, because Plaintiffs unduly delayed in seeking leave to amend. Defendant contends that Plaintiffs were aware of much of the information supporting their proposed amendment as early as the September 2025 evidentiary hearing on Plaintiffs' motion for preliminary injunction but waited another five months to amend their complaint based on such information.

Defendant fails to demonstrate that undue delay warrants denying or limiting the scope of Plaintiffs' proposed amendment. As the Sixth Circuit has recognized, "[o]rdinarily, delay alone, does not justify denial of leave to amend." *Morse v. McWhorter*, 290 F.3d 795, 800 (6th Cir. 2002). Rather, the amendment must result in prejudice to the opposing party or impose an unwarranted burden on the court. *Id.* "Courts typically find undue delay in cases that are post judgment . . . and in cases where discovery has closed and dispositive motion deadlines have passed." *TIG Ins. Co. v. Hospital Corp. of Am.*, No. 1:11-cv-43, 2014 WL 3118863, at *7 (W.D. Ky. July 7, 2014) (quoting *Owners Ins. Co. v. Hutsell*, No. 2:12-cv-419, 2014 WL 2460132, at *3 (E.D. Tenn. June 2, 2014)). The cases Defendant cites underscore this point. For example, in *Duggins*, above, the plaintiff filed her motion *after* the discovery and dispositive motion deadlines had passed. 195 F.3d at 834. In *Korn*, above, the plaintiff filed his motion after the deadlines for pretrial motions and discovery had passed and after the defendant filed a motion for summary judgment. 382 F. App'x

4

at 449–50; *see also Bridgeport Music, Inc. v. Dimension Films*, 410 F.3d 792, 806–07 (6th Cir. 2005) (finding that the district court did not abuse its discretion in denying leave to amend where motion was filed with only a few weeks of discovery remaining and discovery could not be completed within the remaining time allowed in the scheduling order); *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452 (6th Cir. 2001) (affirming denial of motion to amend filed after discovery had been completed, the dispositive motion deadline had passed, and the defendant had filed its motion for summary judgment). None of these circumstances are present here. Thus, any delay at issue is not significant enough to warrant denial of leave to amend.

### 2.      Undue Prejudice

Defendant contends that the proposed amendment is unduly prejudicial because the parties have already engaged in some discovery, evidentiary proceedings pertaining to the motion for preliminary injunction have been held, extensive motion practice has occurred, and a trial date has been set. Yet, Plaintiffs filed their motion by the deadline for motions for leave to amend and several months prior to the close of discovery. While it is true that the CMO allowing discovery was not entered until more than seven months after the case was filed, much of that delay was attributable to Defendant's own repeated motions.

Defendant also contends that he is prejudiced by the addition of Dumpster Fires Media, LLC, and the expansion of the scope of the original complaint due to the addition of new claims. (ECF No. 217 at PageID.216–17.) However, Defendant fails to show undue prejudice. First, given the undisclosed nature and extent of Defendant's activities pertaining to Plaintiffs' computer system, it is unsurprising that it took Plaintiffs many months to uncover the true extent of Defendant's acts. Second, the addition of Plaintiff's limited liability company is reasonably related to Plaintiffs' DTSA and MUTSA claims against Plaintiff. Any hardship resulting from the need

for the limited liability company to obtain counsel is due to Defendant's own choice of entity for his business rather than prejudice resulting from Plaintiffs' decision to add the entity to the action. Finally, while the amended complaint does expand the scope of the original complaint, the additional allegations and claims all arise out of Plaintiffs' and Defendant's employment relationship and are closely related to the original claims.

### 3.    Noncompliance with Local Rule 15.1

Defendant also contends that Plaintiffs' motion is procedurally deficient because they failed to comply with Western District of Michigan Local Civil Rule 15.1 by redlining their proposed amendment. (ECF No. 217 at PageID.2856.) At best, this argument is patently meritless and, at worst, frivolous, as no such rule or requirement exists in this district's local rules.

### 4.    Futility

Defendant further contends that the amendment is futile as to the breach of fiduciary duty claim and the previously-dismissed DTSA/MUTSA, CFAA, and fraud claims. "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000).

### a.    Breach of Fiduciary Duty

A plaintiff asserting breach of fiduciary duty must allege the following elements: (1) a duty arising from a fiduciary relationship; (2) a breach of that duty; and (3) an injury proximately caused by that failure. *See Fisher v. Perron*, 30 F.4th 289, 299 (6th Cir. 2022) (citing *FCA US LLC v. Bullock*, 446 F. Supp. 3d 201, 214 (E.D. Mich. 2020)). "[A] fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another." *Teadt v. Lutheran Church Missouri Synod*, 237 Mich. App. 567, 580–81 (1999).

Defendant argues that Plaintiffs' breach of fiduciary duty claim is futile because they fail to allege the existence of a fiduciary relationship or the existence of damage or injury. (*Id.* at PageID.2844–47.) Contrary to this argument, Plaintiffs sufficiently allege both the existence of a fiduciary relationship and damages. First, Plaintiffs allege that, as their Chief Technology Officer, Defendant supervised two employees, acted as the primary point of contact for Plaintiffs' outside IT service technicians, and exercised substantial discretionary authority as to Plaintiffs' computer infrastructure, all of which gave rise to fiduciary duties. In essence, Plaintiffs placed full trust and reliance on Defendant in their software upgrade project. Second, Plaintiffs allege that Defendant breached those duties during his employment by deploying malicious code on Plaintiffs' system that provided a back door to their Portal, deliberately capturing sensitive client log-in and credit card information for his own personal use, and planning and developing a competing business. Finally, Plaintiffs allege that they sustained damages at an amount to be proven at trial, which would include, at a minimum, expenses incurred to identify the malicious code (Project Alice) Defendant installed on Plaintiffs' computer system and to repair/remediate any damage result from the presence of such code, as well as lost business due to Defendant's competing business. (ECF No 215 at PageID.2731, 2739–40.) Thus, this claim is not futile.

### b.    CFAA (Computer Fraud and Abuse Act) Claim

Plaintiffs' CFAA claim in their original complaint was based on Defendant's alleged act of unlawfully extorting money from Plaintiffs based upon his unauthorized access of the Lothamer Valuation. The Court dismissed the claim because Defendant's April 6, 2025 demand letter was not an extortionate threat and because Plaintiffs failed to allege loss as defined by the CFAA. (ECF No. 168 at PageID.2204–05.)

In their proposed amendment, Plaintiffs rely on CFAA subsections 1030(a)(2)(C) and (a)(4). Under the first provision, a defendant who (1) "intentionally accesses a computer without authorization or exceeds authorized access," and (2) "thereby obtains . . . information from any protected computer" violates the Act. 18 U.S.C. § 1030(a)(2)(C). Under the second provision, a defendant who (1) "knowingly and with intent to defraud," (2) "accesses a protected computer without authorization, or exceeds authorized access," and (3) "by means of such conduct furthers the intended fraud and obtains anything of value" violates the Act. 18 U.S.C. § 1030(a)(4). Plaintiffs allege that Defendant violated both of these provisions in several ways. First, they allege that his act of downloading a copy of the Lothamer Portal to a non-Lothamer-owned computer amounted to a violation because Plaintiffs never authorized Defendant to download a copy to a non-Lothamer-owned computer. (ECF No. 215 at PageID.2693–2700.) Second, Plaintiffs allege that Defendant violated these provisions by unlawfully capturing usernames and passwords of everyone who logged into or attempted to log into the Portal. (*Id.* at PageID.2700–2709.) Finally, Plaintiffs allege that Defendant violated these provisions by creating a secret backdoor from a non-Lothamer-owned computer into the Portal when he deployed Project Alice on Plaintiffs' system. (*Id.* at PageID.2709–18.)

In spite of Plaintiffs' new allegations, Defendant has shown that their proposed CFAA amendment is futile. First, there is no dispute that as Plaintiffs' Chief Technology Officer, Defendant was authorized to access Plaintiffs' protected computers. The question, then, is whether Defendant exceeded his authorized access by engaging in the foregoing alleged acts. In *Van Buren v. United States*, 593 U.S. 374 (2021), the Supreme Court reviewed a police sergeant's criminal conviction for violating the CFAA by running a license-plate search in a law enforcement computer database in exchange for money. The specific issue was whether the officer exceeded

8

his authorized access, which the CFAA defines as "to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter." 18 U.S.C. § 1030(e)(6). The Court held that the defendant did not exceed his authorized access because the provision "covers those who obtain information from particular areas in the computer—such  as files, folders, or databases—to which their computer access does not extend." 593 U.S. at 378. In other words, under the statute, an individual can obtain information unlawfully in two ways: (1) by accessing a computer without authorization; and (2) "by accessing a computer 'with authorization' and then obtaining information he is 'not entitled so to obtain.'" *Id.* at 389 (quoting 18 U.S.C. § 1030(a)(2), (e)(6)).

Here, Plaintiffs do not allege that Defendant accessed data he was not authorized to access, which is what the CFAA prohibits. *See Royal Truck & Trailer Sales & Service, Inc. v. Kraft*, 974 F.3d 756, 760 (6th Cir. 2020) ("The CFAA prohibits accessing data one is not authorized to access."). For example, this provision may well have applied to Plaintiff's original CFAA claim asserting unauthorized access to the Lothamer Valuation, but this is not what Plaintiffs allege now. Instead, they complain of Defendant's download of the Portal to a non-Lothamer-owned computer while he was an employee (which he was authorized to access), his capture of usernames and passwords of users of the Portal, and his deployment of Project Alice to access the Portal, all of which occurred while Defendant was an employee with access to the system. While Defendant's acts may have amounted to misuse of his access, "the CFAA does not reach that conduct." *Id.*

Admittedly, Plaintiffs allege that Defendant accessed their system on at least five occasions following his termination (*id.* at PageID.2676), at a time when he was not authorized to access Plaintiffs' system. They also allege that Defendant captured usernames and passwords for everyone who logged into the portal, but they do not link Defendant's access on these post-

termination occasions to the alleged capturing as part of their CFAA claim. (*Id.* at PageID.2700–09.) In fact, according to Plaintiffs' new factual allegations, while still employed by Plaintiffs, Defendant installed malicious code that emailed him this information without a need to access Plaintiffs' system. (*Id.* at PageID.2676–80.) Moreover, although Plaintiffs now allege loss as defined by the CFA, they fail to allege any plausible loss relating to Defendant's post-termination access of the system. Rather, the loss they allege concerns their efforts to discover and remediate the mess Defendant created while still employed by Plaintiffs with authorized access to their system. Accordingly, the amendment is futile as to the CFAA claim.[1]

### c.    DTSA and MUTSA Claims

Plaintiffs' new allegations that Defendant improperly acquired the Scheduled Deposits Program and Portal without authorization and in violation of Plaintiffs' policy that employees not store confidential information on their personal devices (*id.* at PageID.2720) cures the previously-identified pleading deficiency regarding these claims (ECF No. 188 at PageID.2470).[2] Defendant

---

[1] Apart from foregoing deficiencies, Defendant argues that Plaintiffs' allegations as to his fraudulent intent for purposes of Section 1030(a)(4) are wholly conclusory. "In the context of Section 1030(a)(4), 'intent to defraud means that the defendant acted willfully and with specific intent to deceive or cheat, usually for the purpose of getting financial gain for himself or causing financial loss to another.'" *Ukrainian Future Credit Union v. Seikaly*, No. 17-cv-11483, 2017 WL 5665960, at *6 (E.D. Mich. Nov. 27, 2017) (quoting *Fidlar Techs. v. LPS Real Estate Data Sols., Inc.*, 810 F.3d 1075, 1079 (7th Cir. 2016) (quotation marks omitted)). As the court in *Ryanair DAC v. Booking Holdings Inc.*, 636 F. Supp. 3d 490, 505–07 (D. Del. 2022), observed, district courts around the country have reached different conclusions as to whether, and to what extent, Rule 9(b)'s heightened pleading requirements apply to a claim under Section 1030(a)(4). Because Plaintiffs' CFAA claim fails for other reasons set forth above, the Court finds no need to address the issue. Nonetheless, the Court notes that regardless of which standard applies, Plaintiffs' allegations as to "intent to defraud" and "the intended fraud" are rather conclusory, as Plaintiffs fail to allege how Defendant's access factored into a fraudulent scheme.

[2] Although Plaintiffs suggest that Defendant downloaded the Lothamer Valuation (ECF No. 215 at PageID.2720), the Court found no factual allegation in the proposed pleading supporting this assertion. Nonetheless, for purposes of the trade secrets claim, Plaintiffs have sufficiently alleged that Defendant obtained the Lothamer Valuation through improper access.

argues, however, that the proposed amendment is still futile because the proposed amendment does not plausibly allege the existence of a trade secret. (ECF No. 217 at PageID.2851.) He further argues that the proposed amendment does not plausibly allege that Cheap Tax Solutions acquired, is using, or has disclosed Plaintiffs' trade secrets.

### i.      Trade Secret

Under the DTSA, a trade secret may consist of

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing[.]

18 U.S.C. § 1839(3). It must "derive[] independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information[.]" *Id.* § 1839(3)(B). Finally, information will be protected as a trade secret only if the owner "has taken reasonable measures to keep such information secret[.]" *Id.* § 1839(3)(A). MUTSA defines "trade secret" as follows:

> (d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that is both of the following:
>
> (i) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (ii) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

Mich. Comp. Laws § 445.1902(d). In Michigan, a "'trade secret may consist of any formula, pattern, device or compilation of information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it.'" *Hayes–*

*Albion v. Kuberski*, 421 Mich. 170, 181 (1984) (quoting Restatement of Torts § 757, cmt. b).

Plaintiffs allege that the Scheduled Deposits program amounts to a trade secret because it provides a payment system for Plaintiffs' services that is unique in the tax-resolution and advocacy space. (ECF No. 215 at PageID.2655.) Plaintiffs further allege that the Scheduled Deposits program has independent economic value to Plaintiffs because it eliminates the need for employees to manually enter some types of information, which increases profitability and collections. (*Id.* at 2719.) As for the Portal, Plaintiffs allege that it has independent economic value because it streamlines their business operations, which allows them to scale operations and efficiently serve customers. (*Id.* at PageID.2719) Finally, Plaintiffs allege that they protect these and other computer programs through encryption, password protection, and limited user access. (*Id.* at PageID.2718.)

Defendant contends that, in spite of Plaintiffs' new allegations of improper access based on Defendant's unauthorized downloads of the Scheduled Deposits program and the Portal, Plaintiffs' proposed amendment still does not plausibly allege a "specifically defined trade secret within the meaning of the DTSA or MUTSA." (ECF No. 217 at PageID.2851.) The Court disagrees. "District courts within the Sixth Circuit have held that complaints need only allege the trade secret in general terms or in general contours." *Pritchard v. Thompson*, No. 22-cv-2838, 2023 WL 5817658, at *8 (W.D. Tenn. Aug. 3, 2023), *adopted by* 2023 WL 5746922 (W.D. Tenn. Sept. 6, 2023) (collecting cases). While a plaintiff must give fair notice of the claim, at the pleading stage, a plaintiff is not required "to identify the alleged trade secrets with particular specificity[.]" *Ajuba Int'l v. Saharia*, 871 F. Supp. 2d 671, 691 (E.D. Mich. 2012) (citing *Interactive Sols. Grp., Inc. v. Autozone Parts, Inc.*, No. 11–13182, 2012 WL 1288173, *3 (E.D. Mich. Apr. 16, 2012), and *Compuware Corp. v. Int'l Bus. Mach*s., 259 F. Supp. 2d 597, 605 (E.D. Mich. 2002)). Plaintiffs have done so here with regard to the Scheduled Deposits program and the Portal. Going

forward, however, Plaintiffs must identify and explain the alleged trade secrets "clearly, unambiguously, and with specificity." *Utilase, Inc. v. Williamson*, Nos. 98-1233, 98-1320, 1999 WL 717969, at *6  (6th Cir. Sept. 10, 1999) (quoting *Shatterproof Glass Corp. v. Guardian Glass Co.*, 322 F. Supp. 854, 867 (E.D. Mich. 1970)). In other words, "generally listing software, data processing algorithms, and processes . . . or [providing] disclosures that only reveal the end results of, or functions performed by, the claimed trade secrets," will not suffice. *Torsh, Inc. v. Audio Enhancement, Inc.*, No. 22-2862, 2023 WL 7688583, at *7 (E.D. La. Nov. 15, 2023). For present purposes, however, the claim may proceed as to the Scheduled Deposits program and the Portal.

Defendant has previously argued that Plaintiffs' own admissions in their pleadings show that the Scheduled Deposits program had no utility, and hence no economic value, because it did not function as intended, and multiple failures occurred. (ECF No. 45 at PageID.702.) Defendant's argument has facial appeal at a certain level, but it is not enough to warrant a conclusion at the pleading stage that the Scheduled Deposits program lacks trade secret status because the proposed amended complaint suggests that the Scheduled Deposits program had some functionality and utility before the unsuccessful software upgrades were attempted. (ECF No. 215 at PageID.2654.) Even if discovery ultimately proves otherwise, the claim may proceed for now.

As to the Lothamer Valuation, the Court previously held that the overall valuation itself did not qualify as a trade secret. (ECF No. 188 at PageID.2471.) Plaintiffs now allege that the Lothamer Valuation consists of not only the ultimate valuation, but the underlying data, including historical income statements with adjustment details, revised and pro forma income statements, balance sheets, and cash flow statements. (ECF No. 215 at PageID.2683, 2720.) While authority exists that such general categories of documents or information are not entitled to trade secret protection, *see Luigino's, Inc. v. Peterson*, 317 F.3d 909, 912 (8th Cir. 2003) (holding that "general

13

categories of information," such as research and development information, financial information, and income statements and documents reflecting volume and sales margins do not qualify as trade secrets); *Cotter v. Lyft, Inc.*, No. 13-cv-4065, 2016 WL 3654454, at \*2 (N.D. Cal. Jue 23, 2016) ("While the algorithms and 'proprietary price models' that Lyft uses to set its fares and the rate of Prime Time premiums and, in turn, its commissions from those moneys are trade secrets, the bare output of those algorithms and price models (i.e., the total amount of commissions taken) is not. Though the manner in which Lyft determines its pricing is an important part of its competitive strategy, its revenue is not strategy but rather the result of that strategy."); *Matosantos Com. Corp. v. SCA Tissue N. Am., LLC*, 369 F. Supp. 2d 191, 201 (D.P.R. 2005) (sales volume records not within the definition of a "trade secret"), the Court concludes that further factual development is required to determine whether the financial records underlying the valuation are entitled to trade secret protection. *See LQD Bus. Fin., LLC v. Fundkite, LLC*, No. 19 C 4416, 2020 WL 635906, at \*4 (N.D. Ill. Feb. 11, 2020) (holding that compilations of generally available information such as balance sheets and income statements can qualify as trade secrets). However, Plaintiffs' allegation that Defendant disclosed the Lothamer Valuation in his demand letter that he sent to Plaintiffs' employees (*id.* at PageID.2721) is not actionable, as Defendant's demand letter included only the valuation figure itself, which is not a trade secret.

### ii.    Cheap Tax Solutions

Defendant also contends that Plaintiffs' proposed pleading fails to allege any facts establishing that Cheap Tax Solutions actually acquired, or is using, any of Plaintiffs' trade secrets. Defendant asserts that the proposed amended pleading relies solely on Defendant's status as an owner of Cheap Tax Solutions to impute liability to Cheap Tax Solutions without any factual allegation as to what trade secret Cheap Tax Solutions acquired, how it acquired it, or how it used

14

or disclosed it. (ECF No. 217 at PageID.2852.) Plaintiffs' proposed amendment alleges that Defendant improperly acquired the Scheduled Deposits program and the Portal to use them in his business venture—Cheap Tax Solutions—that he formed with Plaintiffs' former employee Brad Mruzek about two months after Defendant's termination. (ECF No. 215 at PageID.2686.) Plaintiffs further allege that Defendant announced Cheap Tax Solutions as a "better" alternative to Plaintiffs' business on his LinkedIn post and that Defendant had no knowledge of the tax industry to use in launching his new business but for the information and trade secrets he acquired from Plaintiffs. (*Id.* at PageID.2687.)

Given the foregoing allegations, the Court concludes that Plaintiffs' proposed amendment alleges sufficient facts to include Cheap Tax Solutions in its DTSA/MUTSA claims. In addition, Plaintiffs may be entitled to rely, to an extent, on the "inevitable disclosure" doctrine, which allows a plaintiff to "prove a claim of trade secret misappropriation by demonstrating that the defendant's new employment will inevitably lead him to rely on the plaintiff's trade secrets." *Erlich Protection Sys., Inc. v. Flint*, No. 345323, 2019 WL 5851938, at *3 (Mich. Ct. App. Nov. 7, 2019) (per curiam). Although Michigan courts have not yet adopted this doctrine, *id.*, it has been recognized to an extent where an employee downloaded computer files shortly before leaving his employment with the plaintiff for employment with a competitor. *See Actuator Specialties, Inc. v. Chinavare*, No. 297915, 2011 WL 6004068, at *3–4 (Mich. Ct. App. Dec. 1, 2011). Given Plaintiffs' allegations, the inevitable disclosure doctrine *may* apply here.

### d.    Fraud in the Inducement

Defendant also alleges that Plaintiffs' fraud claim remains futile. The Court previously dismissed Plaintiffs' fraud in the inducement claim because Plaintiffs failed to comply with Rule 9(b) with regard to Defendant's alleged statement that he "he would learn PHP" computer

language. (ECF No. 188 at PageID.2474.) Defendant contends that the proposed fraud claim still fails to comply with Rule 9(b).

The Court disagrees. Plaintiffs allege that Defendant made the alleged promise of future performance in his initial March 11, 2024 interview with Plaintiffs. (ECF No. 215 at PageID.2656, 2732.)

Defendant also contends that the fraud claim fails under Michigan law because his alleged statement pertains to a promise of future performance, which cannot form the basis of a fraud claim absent allegations of present intent not to perform, which Defendant argues, are absent from the proposed pleading. (ECF No. 217 at PageID.2854–55.) To establish a fraud claim under Michigan law, the statement must relate to past or existing facts rather than a future promise or expectation. *Hi-Way Motor Co. v. International Harvester Co.*, 398 Mich. 330, 336 (1976). This is because "[f]uture promises are contractual and do not constitute fraud." *Id.* A narrow exception exists, however, where the promise is "made without a present intention of performance, when the promise is given for the purpose of deceiving the promisee and influencing his conduct." *Connellan v. Himelhoch*, 506 F. Supp. 1290, 1296-97 (E.D. Mich. 1981) (citing *Ainscough v. O'Shaughnessey*, 346 Mich. 307 (1956)). To fall within the exception, "a plaintiff must show that, at the time the defendant made the promise, he had a bad-faith, fraudulent intent regarding the future activity in order to deceive the plaintiff and to induce his reliance." *Colby v. Zimmerman*, No. 220395, 2001 WL 1219414, at *1 (Mich. Ct. App. Oct. 12, 2001) (per curiam) (citing *Hi-Way Motor Co.*, 398 Mich. at 338–39). "[E]vidence of fraudulent intent, to come within the exception, must relate to conduct of the actor 'at the very time of making the representations, or almost immediately thereafter.'" *Hi-Way Motor Co.*, 398 Mich. at 338–39 (quoting *Danto v. Charles C. Robbins, Inc.*, 250 Mich. 419, 425 (1930)). Here, Plaintiffs allege only that Defendant's promise

16

that he would learn PHP was false at the time he made it because he was never able to program the Scheduled Deposits program or the Portal upgrade or perform the Portal maintenance and he refused to, or could not learn, PHP and instead replaced the Portal's PHP code with C-Sharp code. (ECF No. 215 at PageID.2732–33.) These allegations, based on Defendant's subsequent conduct, are insufficient to plead anything more than an alleged broken promise. *Cf. Foreman v. Foreman*, 266 Mich. App. 132, 147–48 (2005) (holding that evidence of the defendant's contemporaneous statements to his son of his intent to sell a dealership while denying any intention to do so during divorce proceedings sufficed to allow the jury to infer the defendant's bad-faith intent). Therefore, this claim is futile.

> **B.    Defendant's Motion for Leave to File Amended Answer and Counterclaim**

This motion relates to Defendant's previously-dismissed Michigan Whistleblowers' Protection Act counterclaim. The Court dismissed this counterclaim because Defendant failed plausibly to allege that Plaintiffs were aware of his intention to report alleged violations of law. (ECF No. 188 at PageID.2478–79.) Defendant seeks to amend paragraph 16 of his counterclaim to reference a separation agreement that called for him to release, among other claims, "whistleblower claims." (ECF No. 226-1 at PageID.3030–31.)

Defendant's motion is properly denied because he fails to demonstrate good cause under Rule 16(b)(4) and, even if he were able to establish good cause for his untimely motion, his proposed amendment is futile. First, Defendant was aware of the separation agreement and its release of claims well before the deadline for amendments expired, yet he did not file his motion for leave to amend until almost a month after that deadline passed. As his own exhibits show, Defendant had Jesse Lothamer's March 25, 2025 email and the separation agreement as of March 25, 2025, before this action commenced. (ECF No. 226-4 at PageID.3251–55.) In spite of this, he

17

was not diligent in filing his motion for leave prior to the deadline. As for Defendant's reliance on the state-court actions, which do not involve Defendant, those actions were filed in June of 2025. Defendant's reliance on those actions as a basis to excuse his delay is unpersuasive.

Regardless of good cause, the proposed amendment is futile. The separation agreement's release of "whistleblower claims" is of no moment. It is simply part of a standard form agreement that releases many employment-related claims—including Title VII, Age Discrimination in Employment Act, and Persons with Disabilities Civil Rights Act claims—that Defendant does not assert. (ECF No. 226-4 at PageID.3253.) Defendant's argument that the agreement's reference to "whistleblower claims" demonstrates that Plaintiffs were on notice of Defendant's intent to report is meritless. Likewise, his reliance on whistleblower allegations in the separate state-court lawsuits has no bearing on the sufficiency of Defendant's allegations in this action. Therefore, this motion is properly denied.

### C.    Defendant's Motion for Leave to File Supplemental Counterclaim

Defendant requests leave to file supplemental counterclaims based on copyright infringement. In particular, Defendant alleges in his proposed counterclaims that he is the author and owner of certain C# software libraries, including but not limited to DataAccess.Core and Tools.Core, which were created prior to his relationship with Plaintiffs. (ECF No. 236-1 at PageID.3318.) Defendant further alleges that he provided Plaintiffs written notice on July 8, 2025, that he owned the software, had not licensed or assigned it to Plaintiffs, and objected to their continued use of it. (*Id.*) Defendant alleges that despite the notice, Plaintiffs have continued to use, copy, and incorporate his software into their systems, including their REST AP1, without authorization. (*Id.*) Finally, Defendant alleges that he applied for a copyright registration on October 7, 2025. (*Id.*) The copyright registration was effective March 27, 2026. (ECF No. 260-1

at PageID.3556.) Defendant claims that he was precluded from asserting his copyright infringement counterclaims earlier in this action because the United States Supreme Court's decision in *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296 (2019), precludes a copyright infringement suit prior to registration of the copyright in accordance with the Copyright Act.

Plaintiffs respond that the Court should deny the motion because Defendant unreasonably delayed in applying for copyright registration. They note that Defendant could have applied for a registration at any time since 2016, or even soon after he sent Plaintiffs his July 8, 2025 letter asserting copyright ownership, but he unreasonably waited until October 2025. Plaintiffs contend that Defendant's failure to promptly apply for registration amounts to a lack of diligence that precludes good cause. (ECF No. 255 at PageID.3481.) Citing the declaration of Ryan Varoogian, Plaintiffs' IT consultant, Plaintiffs further assert that the amendment would be futile because they do not use Defendant's code, which was a part of Defendant's "Project Alice" software that he installed on Plaintiffs' system. (*Id.* at PageID.3481–82.) Plaintiffs further argue that amendment would be futile because Defendant's own proposed counterclaim alleges that Software Conceptions, Inc., rather than Defendant, is the copyright owner. (*Id.* at PageID.3482–83 (citing ECF No. 236-1 at PageID.3319.) Finally, Plaintiffs argue that Defendant's attempt to amend under Rule 15(d) is improper because the issuance of a copyright registration is not a transaction, occurrence, or event within the meaning of Rule 15(d).

In *Fourth Estate*, the Supreme Court resolved a circuit split as to when registration of a copyright occurs for purposes of 17 U.S.C. § 411(a), which provides that "no civil action for infringement of the copyright in any United States work shall be instituted until . . . registration of the copyright claim has been made in accordance with this title." The Court observed that

"although an owner's rights exist apart from registration, . . . registration is akin to an administrative exhaustion requirement that the owner must satisfy before suing to enforce ownership rights[.]" 586 U.S. at 301. Thus, the Court held, for purposes of Section 411(a), "'registration . . . has been made' . . . not when an application for registration is filed, but when the Register has registered a copyright after examining a properly filed application." *Id.* at 309. Following *Fourth Estate*, many district courts, including courts within the Sixth Circuit, have refused to allow plaintiffs to file amended complaints to assert copyright claims that ripened due to registration after the lawsuit was filed or to remedy premature copyright claims asserted in the original complaint. *See*, *e.g.*, *Evans v. Robertson*, No. 24-cv-13435, 2026 WL 1108931, at *3 (E.D. Mich. Feb. 9, 2026) ("A plaintiff cannot cure a failure to exhaust after the fact by amending the complaint once copyright registration or refusal is obtained.") (citing *Stringer v. Richard*, No. 4:21-cv-00632, 2022 WL 3223800, at *2 (N.D. Ohio Aug. 10, 2022)); *Pain Mgmt. Techs., Inc. v. Protocol Sols., LLC*, No. 1:25-cv-796, 2026 WL 1129542, at *6–7 (N.D. Ohio Apr. 27, 2026) (denying the plaintiff's motion to amend to assert a copyright claim based on a registration issued almost four months after the plaintiff filed the action because *Fourth Estate* barred such claims in the existing lawsuit").

The present situation is different from these cases, as Defendant did not initiate this action and seeks to assert a counterclaim. More to the point, 17 U.S.C. § 411(a) speaks in terms of a "civil action for infringement" rather than a claim for infringement. Having found no case holding that *Fourth Estate* precludes the assertion of a counterclaim for copyright infringement following post-complaint issuance of a registration, *see Covetrus Inc. v. Actian Corp.*, No. 2:21-cv-97, 2023 WL 6389059, at *4 (D. Me. Oct. 2, 2023) (observing that "a copyright infringement action (or counterclaim) filed before the claimant registers the copyright is subject to dismissal, without

prejudice, for failure to state a claim"), the Court finds that the proposed amendment does not run afoul of *Fourth Estate*'s holding.

The Court next considers whether the proposed counterclaim qualifies as a supplement under Rule 15(d) or an amendment under Rule 15(a). Because the alleged infringement arose pre-suit in March 2025, Defendant's proposed counterclaim is an amendment rather than a supplement. The Copyright Office's issuance of the registration did not create the claim, but merely exhausted it. Defendant must therefore show good cause. Contrary to Plaintiffs' argument, Defendant's delay in seeking registration does not demonstrate a lack of diligence. The CMO setting the deadline for amendments was entered on January 6, 2026—after Defendant had submitted his copyright application. At that point, Defendant could not have moved to amend to assert his copyright infringement claims because the registration had not yet issued.

Last, the Court considers futility. Contrary to Plaintiffs' argument, Sixth Circuit authority holds that an amendment is futile if the proposed amendment could not survive a motion to dismiss for failure to state a claim. "The test for futility . . . does not depend on whether the proposed amendment could potentially be dismissed on a motion for summary judgment; instead, a proposed amendment is futile only if it could not withstand a Rule 12(b)(6) motion to dismiss." *Rose*, 203 F.3d at 421; *see also Croskey v. Union Sec. Inc. Co.*, 1:09-cv-400, 2009 WL 3401162, at *2 (W.D. Mich. Oct. 16, 2009) ("Plaintiff, in essence, seeks to try the entire case in the context of a motion to amend, which the appellate authorities clearly do not countenance."). Plaintiffs' assertions that they do not use any of Defendant's copyrighted code in their Portal and that Defendant does not own the asserted copyright are fact issues better suited for determination on summary judgment, particularly in light of Defendant's submission of the copyright registration listing Defendant as the owner. Therefore, the motion will be granted.

21

### III.  Conclusion

For the foregoing reasons, Plaintiffs' Motion for Leave to File a First Amended Complaint (ECF No. 213) is **GRANTED IN PART AND DENIED IN PART**. The motion is **granted** as to all claims except the CFAA and fraud in the inducement claims, which are **denied as futile**. The Clerk shall docket Plaintiffs' proposed amendment in accordance with this Order. Defendant's Motion for leave to File Third Amended Answer and Counterclaim (ECF No. 226) is **DENIED**. Finally, Defendant's Motion for Leave to File Supplemental Counterclaim (ECF No. 236), which the Court considers an amendment, is **GRANTED**.

**IT IS SO ORDERED**.

Dated: May 13, 2026                        /s/ Sally J. Berens
                                                        SALLY J. BERENS
                                                        U.S. Magistrate Judge