UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LOTHAMER TAX RESOLUTION, INC., et al.,

      Plaintiffs,                              Hon. Hala Y. Jarbou

v.                                        Case No. 1:25-cv-579

PAUL KIMMEL, et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATION

Presently before me is Defendant Paul Kimmel's Motion to Dismiss Counts III, IV, VII, VIII, and IX and Certain Newly Added Allegations Contained in Count V of Plaintiffs' First Amended Complaint. (ECF No. 276.) Plaintiffs have responded, and Defendant has replied. (ECF Nos. 293, 298.) For the following reasons, pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the motion be **GRANTED IN PART AND DENIED IN PART** as set forth below.

### I.   Background

The facts giving rise to this action are set forth in previous rulings (ECF Nos. 168, 188) and need not be repeated here. In short, Plaintiffs hired Defendant Kimmel to serve as their Chief Technology Officer (CTO) to perform upgrades and rewrites to their computer system and programs. Less than a year later, the relationship soured, and Plaintiffs terminated Kimmel's employment. The present action followed shortly thereafter.

On May 13, 2026, I granted Plaintiffs' motion for leave to file their First Amended Complaint (FAC) in part and denied it in part. (ECF No. 273.) In particular, addressing Defendant Kimmel's arguments opposing the motion, I found that Plaintiff's breach of fiduciary duty (Count

9) and Defend Trade Secrets Act (DTSA)/Michigan Uniform Trade Secrets Act (MUTSA) (Counts 3 and 4) claims were not futile. (*Id.* at PageID.3658–59, 3662–66.) In contrast, I concluded that the Computer Fraud and Abuse Act (Count 2) and fraud-in-the-inducement (Count 6) claims were futile. (*Id.* at PageID.3659–62, 3667–69.) Therefore, Plaintiffs' remaining claims are their Stored Communications Act, DTSA/MUTSA, breach of contract, conversion, and breach of fiduciary duty claims (Counts 1, 3–5, 7–9.)

## II.   Motion Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted tests the legal sufficiency of a complaint by evaluating its assertions in a light most favorable to Plaintiff to determine whether it states a valid claim for relief. *See In re NM Holdings Co., LLC*, 622 F.3d 613, 618 (6th Cir. 2010). Pursuant to Federal Rule of Civil Procedure 12(b)(6), a claim must be dismissed for failure to state a claim on which relief may be granted unless the "[f]actual allegations [are] enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007). As the Supreme Court has held, to survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the complaint simply pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* As the Court further observed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678-79.

When ruling on a Rule 12(b)(6) motion to dismiss, a district court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).

### III.  Discussion

#### A.    DTSA/MUTSA Claims

Defendant Kimmel raises two grounds for dismissal of the DTSA/MUTSA claims.[1]  First, he contends that the FAC does not cure the original Complaint's failure to allege improper acquisition of Plaintiffs' claimed trade secrets because, while the FAC refers to a policy prohibiting employees from storing confidential information on their personal computers and devices, it does not identify the policy or cite any document binding Kimmel to the alleged policy. Second, Kimmel claims that Plaintiffs' DTSA claims fail to account for the grant of immunity under 18 U.S.C. § 1833(b)(1) for disclosure of a trade secret to the government in the course of reporting a suspected violation of law and that Plaintiffs failed to provide the notice of immunity required by 18 U.S.C. § 1833(b)(3)(A), thereby precluding an award of exemplary damages or attorney fees. 18 U.S.C. § 1833(b)(3)(C). Although Kimmel further states that Plaintiffs fail to allege a claim under MUTSA because they do not allege a trade secret (ECF No. 276 at PageID.3871), I will disregard this assertion as he fails to develop the issue. *See Clemente v. Vaslo*, 679 F.3d 482, 497

---

[1] I have considered all of the arguments Kimmel raised and developed in his motion. To the extent he raised new arguments in his reply, I have disregarded them because they are waived. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) (arguments made for the first time in reply brief are waived); *Hoch v. SunTrust Mtg., Inc.*, No. 1:18-cv-767, 2019 WL 1383712, at *2 (W.D. Mich. Jan. 18, 2019) ("SunTrust's argument regarding the exemption in M.C.L.A. § 445.1675(m)—raised for the first time in SunTrust's reply brief—is deemed waived.").

(6th Cir. 2012) (issues raised in a perfunctory manner are deemed waived); *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.") (citation and quotation omitted).[2] Finally, Kimmel's access argument, even if accepted, does not dispose of the portion of Plaintiffs' trade secrets claims pertaining to the so-called Lothamer Valuation.

### 1.      Unauthorized Access

Plaintiffs allege that "despite knowing it is against Plaintiffs' policy to store confidential information on his personal computer, Defendant Kimmel downloaded the Scheduled Deposits Program and Portal to his personal computer without permission to do so." (ECF No. 274 at PageID.3744.) Kimmel contends that Plaintiffs' conclusory allegation about a policy fails to support a plausible inference of unauthorized access.

Kimmel supports his motion with a declaration reciting various provisions of the Lothamer Employee Handbook to demonstrate that it contains no provision corresponding to the above complaint allegation. (ECF No. 276-1.) He also attaches "onboarding" emails that he contends establish full authorized access on his personal computer. The exhibit consists of a pre-employment email from Jesse Lothamer to both Jordan Casey of Fulkrum and Kimmel requesting Casey to "give Paul full access to our portal for him to start reviewing." (ECF No. 276-6.) In turn, Casey emailed Kimmel stating, "I added you to the repository. You can clone the software and read all of the code for the portal. You should have received a link." (*Id.*) Kimmel contends this

---

[2] Even if the argument were sufficiently developed, I would reject it for the reasons set forth in the May 13, 2026 Order. (ECF No. 273 at PageID.3663–66.)

evidence refutes any allegation that he accessed Plaintiffs' alleged trade secrets without authorization. Kimmel further asserts that the Court may consider the Employee Handbook and emails in deciding his motion to dismiss under the incorporation-by-reference doctrine.

Plaintiffs respond that, contrary to Kimmel's argument and consistent with the FAC's allegation, the Employee Handbook (all applicable versions) contains the following provision, "Employees . . . may not download Firm software onto a non-Firm computer." (ECF No. 293 at PageID.4106 (quoting ECF No. 293-1 at PageID.4154).) Kimmel acknowledged receipt of the Employee Handbook on June 10, 2024, and March 5, 2025. (ECF No. 293-1 at PageID.4165, 4200.) Plaintiffs further contend that the Court may not consider the "onboarding" emails that Kimmel attaches to his motion because the FAC does not refer to them.

Although Kimmel acknowledges the Employee Handbook provision in his reply, he argues that the emails still show that Jessie Lothamer authorized Kimmel to download Plaintiffs' software on his personal computer. Kimmel's argument might be proper in a motion for summary judgment, but it is not proper in a motion to dismiss. There is no dispute that the Employee Handbook is properly considered on a motion to dismiss because Plaintiffs referenced it in the FAC, and it is central to their trade secret misappropriation claims. But that is not true for the emails. While "documents that are not mentioned specifically but which govern the plaintiff's rights and are necessarily incorporated by reference" may be considered, *Trzeciak v. Allstate Prop. & Cas. Ins. Co.*, 569 F. Supp. 3d 640, 645 (6th Cir. 2021) (citing *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997), *abrogated on other grounds by Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002)), the FAC does not even generally refer to the emails, and the emails themselves, while relevant to

the factual issue, do not govern Plaintiffs' claims. Because the emails may not be considered in the present context, Kimmel's argument must be rejected.[3]

### 2.    DTSA Immunity

Kimmel's immunity argument is easily dispatched. The statute provides immunity only where an individual discloses a trade secret "in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney," and the disclosure is "solely for the purpose of reporting or investigating a suspected violation of law[.]" 18 U.S.C. § 1833(a). Kimmel's reliance on this provision fails because Plaintiffs' claims are not based on Kimmel's disclosure of trade secrets to a government official or an attorney. *See Knox Trailers v. Maples*, 581 F. Supp. 3d 1000, 1016 (E.D. Tenn. 2022) (noting that "DTSA only immunizes defendants for their *disclosure* of trade secrets to the government, not for their *use* of such trade secrets against the owner"). Moreover, as noted in *Knox Trailers*, immunity under Section 1883(a) is an affirmative defense that may only be considered on a motion to dismiss if the defense appears on the face of the pleading. *Id.* at 1016–17 (quoting *Ramirez Capital Services, LLC v. McMahan*, No. 4:21-cv-241-ALM, 2021 WL 5907791, at *4 (E.D. Tex. Dec. 14, 2021)). Nothing in the FAC discloses an affirmative defense of immunity. Accordingly, Kimmel's immunity argument lacks merit.

### B.    Breach of Contract

Kimmel contends that two new aspects of Plaintiffs' breach of contract claim fail to state a claim. First, he argues that the new allegations regarding his June 28 and July 30, 2025 LinkedIn posts fail plausibly to allege a breach of the non-disparagement provision in the Employment Contract.    Second,    Kimmel    asserts    that    Plaintiffs'    allegations    regarding    his

---

[3] As Plaintiffs correctly note, even if Kimmel's argument were accepted, dismissal of the trade secret claims would not be warranted because the argument does not address the improper use and disclosure allegations in the FAC.

CheapTaxSolutions.com-related breach of contract are based on conclusory allegations of misuse of confidential information.

### 1.    Non-disparagement Clause

The FAC alleges that Kimmel breached the non-disparagement clause by posting the following statements on LinkedIn:

> This is not a hit piece. It's a set of verifiable facts, backed by federal court filings, emails, and publicly visible claims . . . the code and data I retained contain serious regulatory violations with civil and criminal implications . . . My allegation is that not a single Lothamer customer was ever informed of the breach. To my knowledge, no notice was given to credit agencies or the IRS either. Combine that with a confirmed hack, and your information could already be int eh wrong hands—including on the dark web.

> And there's more. The entire IT department—myself and two other developers—was fired. There were no adverse performance reviews, no reprimands—just frank discussions about questionable business practices and the actual state of the portal.

> . . . .

> Lothamer has repeatedly sought temporary restraining orders (TROs) to suppress my protected speech. If a court ultimately grants such an order, I will comply with it. However, the underlying facts and filings remain public, and others are free to read, report, and share them independently. Truthful republication of public records is protected under the First Amendment.

(ECF No. 274 at PageID.3752.) Plaintiffs allege that the foregoing statements violated the non-disparagement clause because they falsely suggest that Plaintiffs are misleading the public.

Kimmel says that these statements are not actionable because they consist largely of "litigation commentary, discussion of public proceedings, [and] generalized criticism[.]" (ECF No. 276 at PageID.3873.) Plaintiffs do not specifically respond to this argument, but Kimmel does little to develop it by citing case law or other authority or by explaining why statements made about litigation do not amount to disparagement.

In *Holsapple v. Cunningham*, 817 F. App'x 95 (6th Cir. 2020), the Sixth Circuit considered whether a statement by the defendant's attorney concerning the plaintiff's lawsuit amounted to a

7

breach of the non-disparagement provision in the parties' prior settlement agreement. Because the settlement agreement, like the Employment Contract at issue here, did not define "disparaging," the court looked to other sources, including the Restatement (First) of Torts § 624 (1938) and Black's Law Dictionary (11th ed. 2019) for guidance. Many of the definitions pertained to discrediting the reputation of a person or a thing. *Id.* at 111–12. The court noted that it was "slightly less clear whether 'disparaging' comments must be objectively verifiable," as is the case with defamatory statements under Michigan law. *Id.* at 111. Nonetheless, it suggested that to be actionable as disparagement the statement must be objectively verifiable rather than simply opinion. *Id.* at 111–12. The court also found it important to consider the forum in which the lawyer made the statements as well as her role as advocate. The court found the lawyer's statements not disparaging because she made them in the context of a newspaper interview and they were not intended to "belittle" the plaintiff's "value" or "importance" or to "discredit" him in the community. *Id.* at 112. It further noted that, given the context, the defendant's lawyer likely assumed that the article would feature comments about the case from the plaintiff's counsel as well (which it did). The court also observed that, because of the adversarial setting, it would have been appropriate for the lawyer to advocate for her client's legal position, further indicating that she did not speak with an intent to "belittle" the plaintiff's "value" as a deputy in the community. *Id.*

Although the present situation is distinguishable, *Holsapple* provides some guidance as to whether the above statements (June 28, 2025 (first and second paragraphs) and July 30, 2025 (third paragraph)) are actionable as disparagement. In contrast to *Holsapple*, Kimmel was not acting in the role of a legal advocate on behalf of a client while being interviewed by a journalist. Rather, he was acting for himself posting his own views on his former employer on his LinkedIn page. As for the first post, I conclude that it can be considered disparagement because it states facts that are

subject to objective verification and suggests that Plaintiffs are misleading the public by failing to disclose a data breach. Thus, the statement discredits Plaintiffs' reputation and can be considered disparaging. I reach a different conclusion as to the second statement, which merely reflects Kimmel's summary of, and position in, the pending litigation and is more appropriately considered a statement of opinion rather than a statement of actual fact. Moreover, it does not appear to discredit Plaintiffs. Therefore, I recommend that the Court grant Kimmel's motion with respect to the July 30, 2025 post.

### 3.    CheapTaxSolutions.com Breach

Kimmel contends that Plaintiffs' breach of contract theory related to his involvement with CheapTaxSolutions.com is based on conclusory allegations of misuse because "the FAC does not plausibly identify what contractual information Defendant allegedly used, disclosed, or exploited in violation of the parties' agreements[.]" (ECF No. 276 at PageID.3873.) Kimmel also argues that this claim fails because Plaintiffs fail to allege sufficient factual matter supporting damages, such as specific lost customers, engagements, or transactions or a plausible connection between Kimmel's statements regarding CheapTaxSolutions.com and any economic loss.

While it is true that the FAC contains no factual detail about the specific information Kimmel allegedly used to form his new business, as Plaintiffs note, the claim is that he violated his contractual obligation not to compete with Lothamer, regardless of his use of trade secret/confidential information. Because Kimmel's own statements suggest that CheapTaxSolutions.com competes with Lothamer, Plaintiffs sufficiently allege a breach of this provision.[4] As for damages, Plaintiffs allege lost business and reputational harm. (ECF No. 274 at

---

[4] In his reply, Kimmel argues that his statements regarding CheapTaxSolutions.com merely referred to a prospective business and notes that the FAC alleges no fact suggesting that CheapTaxSolutions.com had actually launched or was serving customers. (ECF No. 298 at

PageID.3755.) This is sufficient to allege a breach of contract under the *Twombly*/*Iqbal* pleading standard.

### C.    Conversion

Kimmel contends that Plaintiffs' conversion claims are subject to dismissal on two grounds. First, he contends that the claims are displaced by MUTSA because they are based on conduct that amounts to misappropriation of trade secrets. Second, Kimmel contends that the claims must be dismissed to the extent they are based on his failure to return Plaintiffs' property because his obligation to return the property does not arise from a duty that is separate and distinct from his contractual obligations.

### 1.    MUTSA Displacement

MUTSA creates a statutory remedy for misappropriation of trade secrets. Mich. Comp. Laws § 445.1903. In addition, MUTSA displaces conflicting tort remedies for misappropriation of a trade secret. Mich. Comp. Laws § 445.1908(a); *see also Bliss Clearing Niagara, Inc. v. Midwest Brake Bond Co.*, 270 F. Supp. 2d 943, 946 (2003) (noting that MUTSA "displaces conflicting tort remedies for misappropriation of a trade secret"). Conversely, MUTSA does not displace a tort claim based on conduct that is independent of misappropriation of trade secrets. *Id.* Dismissal is thus appropriate only where the conduct underlying the tort claim is based solely on the misappropriation of a trade secret. *American Furukawa, Inc. v. Hossain*, 103 F. Supp. 3d 864, 884 (E.D. Mich. 2015) ("The critical inquiry for courts in determining whether a claim is displaced by

---

PageID.4226–27.) At the preliminary injunction hearing in September 2025, however, Kimmel testified that he is operating CheapTaxSolutions.com. (ECF No. 145 at PageID.1936.) Thus, his argument is meritless. Kimmel also asserts that the April 21, 2025 LinkedIn post does not violate the non-disparagement provision (ECF No. 298 at PageID.4227), but he did not raise this issue in his opening brief, and the Court has already concluded that this post supports a claim for breach of the non-disparagement clause. (ECF No. 188 at PageID.2471–72.)

the MUTSA is whether the claim in question is based *solely* on the misappropriation of a trade secret."). Courts have applied MUTSA's displacement provision to conversion claims when the allegations track misappropriation of a trade secret. *See Jadian, Inc. v. National Quality Assurance USA, Inc.*, No. 1:17cv907, 2019 WL 13209269, at *12 (E.D. Mich. Apr. 10, 2019) (finding conversion and unjust enrichment preempted); *Bliss*, 270 F. Supp. 2d at 950 (dismissing conversion claim because the complaint contained no allegations "that give rise to a conversion claim apart from the use of trade secrets").

Plaintiffs do not dispute that MUTSA could preempt their conversion claims. They contend, however, because Federal Rule of Civil Procedure 8(d) allows a party to plead claims in the alternative, Kimmel's request for dismissal based on MUTSA displacement is premature. As support, Plaintiffs cite *Prudential Defense Solutions, Inc. v. Graham*, 498 F. Supp. 3d 928 (E.D. Mich. 2020), in which the defendant argued that the plaintiff's breach of fiduciary duty claim was barred by MUTSA. The court found that because it had not yet determined whether a "trade secret" was at issue under MUTSA, a finding of MUTSA displacement was not warranted at that stage of the case. *Id.* at 940. The court cited the Sixth Circuit's decision in *Oldnar Corp. v. Panasonic Corp. of North America*, 766 F. App'x 255, 268 (6th Cir. 2019), which concluded that the district court erred in deciding that the plaintiff's unjust enrichment claims were barred by MUTSA without first determining whether the misappropriated information at issue "actually satisfied MUTSA's 'trade secret' definition." *Id.* Plaintiffs contend that because there has been no determination whether the information at issue constitutes a "trade secret" under MUTSA, Kimmel's displacement argument is premature.

Here, as in *Prudential Defense Systems* and *Oldnar Corp.*, the Court has yet to decide whether "trade secrets" as defined by MUTSA are at issue. Therefore, Kimmel's request for dismissal on this ground should be denied as premature.

### 2. Separate Duty

Unlike his MUTSA argument, Kimmel's separate duty argument is not premature. It is well established that where the parties have a contractual relationship, a plaintiff may not state a tort claim if the defendant's alleged duties "arose solely out of the contractual relationship between the parties and not from any independent legal obligations supporting a cause of action in tort." *Rinaldo's Constr. Corp. v. Mich. Bell Tel. Co.*, 454 Mich. 65, 79 (1997); *see also Fultz v. Union-Commerce Assocs.*, 470 Mich. 460, 466 (2004) (stating that "a tort action will not lie when based solely on the nonperformance of a contractual duty"); *QQC, Inc. v. Hewlett-Packard Co.*, 258 F. Supp. 2d 718, 723–24 (E.D. Mich. 2003) ("Plaintiffs cannot establish a violation of legal duty that is separate and distinct from Defendant's contractual duties; thus, under Michigan law, Counts VII, VIII, and IX fail to state a claim upon which relief can be granted."). Stated differently, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Consolidated Rail Corp. v. Grand Trunk W. R.R. Co.*, No. 09-10179, 2009 WL 3460334, at *6 (E.D. Mich. Oct.22, 2009) (citing *Hart v. Ludwig*, 347 Mich. 559 (1956)).

As part of their breach of contract claim, Plaintiffs allege that Kimmel breached the Employment Agreement by failing to return the Scheduled Deposits program and the Portal to Plaintiffs within two weeks from the date his employment was terminated. (ECF No. 274 at PageID.3753-54.) In their conversion claim, Plaintiffs allege that Kimmel was no longer authorized to possess the Scheduled Deposits program and the Portal following his termination, and his failure to return those items constitutes a breach of his contractual obligation to return

12

those items to Plaintiffs. (*Id.* at PageID.3759.) Kimmel argues that Plaintiffs' conversion claims are based solely on his obligations in the Employment Agreement "rather than any freestanding tort duty existing independent of the parties' agreements." (ECF No. 276 at PageID.3876.)

Plaintiffs respond that the source of its conversion claim is not the contracts, but Michigan property law, which makes it unlawful for a person to possess and/or use the property of another without authorization. Plaintiffs further contend that, while their contracts with Kimmel temporarily authorized him to access the Scheduled Deposits program and the Portal, the contracts are not the source of their property rights. (ECF No. 293 at PageID.4115.)

Neither party cites a case with analogous facts. However, *Graham Medical Technologies, LLC v. Akron Medical, Inc.*, No. 2:09-cv-14905, 2011 WL 1899230 (E.D. Mich. May 19, 2011), is instructive. There, the plaintiff and the defendant entered into an independent representative agreement under which the plaintiff provided medical devices and other property to the defendant on consignment. The parties' agreement contained a provision requiring the defendant to return all products and property to the plaintiff within seven days upon receipt of a notice of termination. *Id.* at *1. After the plaintiff implemented a new inventory management system designed to keep better track of outstanding inventory, it requested its representatives to return their outstanding inventory being held on consignment. When the defendant failed to respond to the plaintiff's requests to return its inventory, the plaintiff sent the defendant a notice of termination of the agreement demanding return of its property within seven days. The defendant failed to comply, so the plaintiff sued for breach of contract and conversion. The defendant argued that the conversion claim failed because its duty to return the inventory was governed by the agreement, absent which the defendant had no duty to return the inventory. *Id.* at *6. The court disagreed, stating:

> While Defendant undertook a contractual obligation to return Plaintiff's inventory upon Plaintiff's request following termination of the Agreement, Defendant's

> failure to return the inventory breached a duty separate and distinct from the breach of contract. Given the bailment situation, in which Defendant was entrusted with Plaintiff's inventory, Defendant had a separate tort obligation to refrain from taking actions inconsistent with Plaintiff's ownership interest in the inventory, which would exist if there were no contract at all.

*Id.* at *7.

The present situation is analogous to *Graham Medical Technologies* because Kimmel's employment relationship with Plaintiffs was in the nature of a bailment which, under Michigan law, exists when one person delivers personal property "to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed and the property returned or duly accounted for when the special purpose is accomplished." *Goldman v. Phantom Freight, Inc.*, 162 Mich. App. 472, 479–80 (1987) (citing *In re George L. Nadell & Co.*, 294 Mich. 150, 154 (1940), and *National Ben Franklin Ins. Co. v. Bakhaus Contractors, Inc.*, 124 Mich. App. 510, 512, n. 2 (1983)). Here, Plaintiffs delivered property to Kimmel for the specific purpose of allowing him to perform his employment duties with the understanding that he would return it upon termination of his employment. Thus, Kimmel had a duty separate from his contractual obligations not to retain Plaintiffs' property.

### D.      Breach of Fiduciary Duty

Kimmel raises substantially the same arguments regarding the breach of fiduciary duty claim as he raises regarding the conversion claims: MUTSA displaces the claim and it is based on the same contractual duties as his breach of contract claim. The MUTSA argument should be denied for the reasons set forth above regarding the conversion claims.

As for the existence of a separate duty to support the claim, Plaintiffs allege that, while employed as the CTO, Kimmel breached his fiduciary duties by deploying malicious code on Plaintiffs' system that provided a back door to the Portal, deliberately capturing sensitive client

log-in and credit card information for his own personal use, and planning and developing a competing business.[5] (ECF No. 274 at PageID.3764) Apart from his contractual duties, as CTO Kimmel owed duties of loyalty and to act in the company's best interest. *See Digital Commerce, Ltd. v. Sullivan* (*In re Sullivan*), 305 B.R. 809, 819 (Bankr. W.D. Mich. 2004) (noting that Michigan common law imposes a fiduciary duty of loyalty on all employees of a corporation but that such duties "are even more stringent" when the employee is an officer or director of a corporation). It is the alleged violation of these duties that form the basis of Plaintiffs' breach of fiduciary duty claim.

## IV.  Conclusion

For the foregoing reasons, I recommend that the Court **GRANT IN PART AND DENY IN PART** Kimmel's motion to dismiss. (ECF No. 276.) More specifically, I recommend that the motion be **granted** only as to the July 30, 2025 LinkedIn post relating to Plaintiffs' breach of non-disparagement clause claim set forth in Count 5 and that the motion be **denied** in all other respects.

Dated: August 11, 2026

        /s/ Sally J. Berens
        SALLY J. BERENS
        U.S. Magistrate Judge

## NOTICE

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

---

[5] In the May 13, 2026 Order, I concluded that Plaintiffs adequately alleged a breach of fiduciary duty claim against Kimmel. (ECF No. 273 at PageID.3659.)